THE PEOPLE *ex rel.* John J. Healy, State's Attorney, Relator, *vs.* THEODORE G. CASE, Respondent.

*Opinion filed October 26, 1909.*

1. DIVORCE—*public has an interest in a divorce suit.* While a divorce suit is a·controversy between private parties, yet the interest of the public in the marriage status is also concerned, and the court will regard such interest whatever attitude the parties may take, and will not grant a divorce upon the consent or collusion of the parties.

2. SAME—*second bill on same facts should be dismissed.* A decree dismissing a bill for divorce for want of equity, after a hearing of the complainant's evidence, is a final decree, and if the same bill is subsequently filed and the matter presented to another judge, it is his duty to dismiss the bill upon learning of the prior adjudication, whether such adjudication is pleaded or not.

3. ATTORNEYS AT LAW—*an attorney filing same bill for divorce a second time may be suspended.* An attorney who files a bill for divorce and obtains a decree without disclosing to the court that the same bill has been previously dismissed for want of equity by another judge upon substantially the same evidence is guilty of a fraud upon the court and may be suspended by the Supreme Court from practicing in all courts of record of the State.

FARMER, C. J., and VICKERS, J., dissenting.

INFORMATION to disbar.

ALBERT M. KALES, and JOHN L. FOGLE, for relator.

CHARLES HUGHES (S. S. GREGORY, of counsel,) for respondent.

Per CURIAM: The State's attorney of Cook county, on the relation of the committee on grievances of the Chicago bar association, filed in this court an information to disbar, or, in the alternative, to suspend or otherwise discipline, as the court in its discretion might deem proper, Theodore G. Case, an attorney, on the ground that he procured a decree of divorce in the circuit court of Cook county by fraudu-

lent collusion with the complainant and the defendant therein, and by fraudulently concealing from the knowledge of the judge the fact that substantially the same matters involved in the divorce proceeding had previously been heard and determined adversely to his client in a prior divorce proceeding in the superior court of said county, in which, upon a hearing, a final decree had been entered dismissing the bill for want of equity. In his answer the respondent denied that he had fraudulently concealed from or failed to inform the judge of the circuit court that substantially the same matters involved in the second divorce proceeding had been previously heard and determined in the superior court. He denied collusion with the complainant and defendant, or either of them, or with the solicitors of the defendant in the divorce case, or with any other person, to procure a divorce for his client, and averred that he believed at the time of the hearing, and still believed, that his client had a good cause of action and was entitled to a divorce, and that he believed the law to be that the dismissal of the bill for want of equity by the superior court was not a bar to a second suit unless pleaded in said second suit. The answer averred that in all respondent did he acted in good faith in the belief that he was justified by the law, and that he had no fraudulent or corrupt motive in any of the steps taken by him in the litigation. The issues were referred to George Mills Rogers, master in chancery of the circuit court of Cook county, as a commissioner of this court, to take the proofs and report his conclusions of law and fact therefrom. There was no controversy before the commissioner concerning the facts, which are as follows:

On July 19, 1907, the respondent filed a bill for divorce in the superior court of Cook county for his client, Eliza Ellen Epcke, praying for a divorce on the ground of extreme and repeated cruelty, and the husband, by his solicitors, afterward filed an answer denying the charges of the bill. On November 23, 1907, the respondent appeared

for the complainant before Judge Barnes and a solicitor appeared for the defendant, and the cause was heard on the testimony of the complainant and two witnesses in her behalf. The solicitor for the defendant did not cross-examine the witnesses or introduce any testimony or take any part in the hearing. A written agreement had been entered into by the parties and was presented in court as to alimony and the custody of a child. The chancellor dismissed the bill for want of equity, and after leaving the court room there was some conversation in the corridor between the respondent and his client and Adolph R. Weseman, the solicitor for defendant. According to Weseman's testimony respondent stated to his client that they were at liberty to proceed again, the decision of Judge Barnes having only the effect of a non-suit. There was discussion between respondent and Weseman as to whether the order dismissing the bill was a final disposition of the case, and respondent claimed that it was not. Two days afterward, on November 25, 1907, respondent filed in the circuit court of Cook county, a court of concurrent and equal jurisdiction with the superior court, another bill for divorce by Mrs. Epcke against her husband, containing the same allegations and charges of cruelty as the former bill, and no other. Shortly afterward respondent met Judge Stough, a judge of a circuit outside of Cook county who was then, by request of the proper authorities, holding court in Chicago, and asked him to hear the cause. The request was not a peculiar or unreasonable one according to the general practice in hearing divorce cases in Cook county, and Judge Stough agreed to comply with it. Thereupon respondent commenced to talk to the judge about the case, and the judge said: "I do not want to hear anything about it; I will hear your case when you bring your witnesses in." Weseman testified that the respondent told him, previous to the hearing before Judge Stough, that he had started to tell Judge Stough about the former hearing but was told by the judge he did not want

to talk about the case; that if respondent made a good case a decree would be granted, otherwise not. The respondent had not proceeded far enough in his talk with Judge Stough before he was interrupted, to acquaint him with the fact of the former hearing. The defendant's solicitors entered their appearance and filed an answer denying the allegations of the bill, and the cause was heard before Judge Stough on November 29, 1907. Weseman was again present at the hearing and had charge of the defendant's side of the case. Complainant and the same two witnesses who testified before Judge Barnes testified before Judge Stough and gave substantially the same testimony, and no other. The defendant's solicitor did not cross-examine the witnesses or introduce any testimony and a decree was granted by Judge Stough. Shortly after the second hearing Judge Barnes became acquainted with the fact that Mrs. Epcke had filed the second bill, and he thereupon called on Judge Stough, told him of the first hearing and decree and said he thought the second decree should be vacated. This was the first information Judge Stough had that the case had been finally determined in the other court and he immediately vacated his decree. The respondent was called to Judge Stough's court room, and upon being informed that the decree had been vacated, said that in the conversation had in the corridor he wanted to tell the judge about the former hearing and he would not let him.

These facts were proved before the commissioner and were reported by him, followed by his conclusions that there was no collusion; that respondent did not wrongfully commit any fraud on the court; that it was not the strict legal duty of respondent to advise the second trial judge of the prior adjudication nor the duty of the defendant to plead it if he did not desire to do so, in the absence of a collusive agreement to keep such knowledge from the court; that if respondent was honestly convinced that his client was entitled to a decree on the facts, there being no collusion or

secret agreement between the parties, he could file a second
bill, taking his chances on a plea of *res judicata* being in-
terposed, and that the respondent did nothing which he did
not have a strict legal right to do in his efforts to obtain
for his client a decree of divorce. The relator excepted
to the report of the commissioner and the cause has been
heard and argued on said exceptions.

The question presented is whether the concealment from
the chancellor of the circuit court of the prior adjudication
by a chancellor of a superior court, or the failure to dis-
close it, was such a fraud on the court as shows the re-
spondent to be unworthy of a license to practice law in this
State. That the first decree dismissing the bill for want
of equity was a final and conclusive determination of the
rights of the parties is not denied; but it is argued in re-
spondent's behalf that such defense could be considered by
the chancellor only if set up by the defendant by plea, and
that respondent was under no obligation to disclose to the
chancellor the fact that upon the identical pleadings, after
a full hearing, the issue had been determined in a court of
competent jurisdiction against his client. The commis-
sioner seems to have adopted that view, and concluded that
it was not the strict legal duty of respondent to make the
disclosure in the absence of a collusive agreement to keep
the fact from the knowledge of the court. Of course, it
required no collusive agreement to keep the chancellor in
ignorance of the records of another court, of which he
could have no knowledge unless their contents were brought
to his attention. The argument and conclusion are based
upon an entire misconception of the relation and the duty
of the lawyer to his client and to the court. "The lawyer's
duty is of a double character. He owes to his client the
duty of fidelity, but he also owes the duty of good faith
and honorable dealing to the judicial tribunals before whom
he practices his profession. He is an officer of the court—
a minister in the temple of justice. His high vocation is to

correctly inform the court upon the law and the facts of the case and to aid it in doing justice and arriving at correct conclusions. He violates his oath of office when he resorts to deception or permits his clients to do so. He is under no obligation to seek to obtain for those whom he represents, that which is forbidden by the law." *People* v. *Beattie,* 137 Ill. 553, on page 574.

Whatsoever hesitation there might be in the mind of a lawyer as to what his obligation requires of him in the way of disclosures against his client's interest, there can be no question of the duty to make the disclosure of a prior adjudication in a case like this. In christian nations marriage is not treated as a mere contract between the parties, to be suspended or dissolved at their pleasure, but rather as a status based upon public necessity and controlled by law for the benefit of society at large. (14 Cyc. 576.) The interests of society are so involved in proceedings to dissolve the marriage relation that the public is interested in such proceedings to a greater degree than in ordinary civil actions. While a divorce suit is a controversy between private parties, the interest of the public in the marriage status is concerned, and the court will regard such interest whatever attitude the parties to the suit may take. (2 Bishop on Marriage and Divorce, sec. 498.) Arising out of the public right that divorce shall be granted only for statutory and sufficient causes, the practice has uniformly been different from that recognized in other cases. A divorce will not be granted upon default or bill taken for confessed unless the charges are sustained by sufficient proof. (*Shillinger* v. *Shillinger,* 14 Ill. 147; *Wheeler* v. *Wheeler,* 18 id. 39.) It will not be granted upon consent of parties, but a cause must be proved to the satisfaction of the court, independently of the fault or confession of either party. (*Dunham* v. *Dunham,* 162 Ill. 589.) "In a divorce suit the interest of the State is paramount to the rights of the parties, or, in more familiar terms, the parties are not en-

titled to relief where the same would be against public policy." (1 Nelson on Divorce and Separation, sec. 8.) "Though a suit for a divorce, upon its face, is a mere controversy between the parties to the record, yet the public occupies the position of a third party. Society has an interest in every marriage, and it is the duty of the State, in the conservation of the public morals, to guard the relation and to see that the status of all applicants for its dissolution should be established." (*Way* v. *Way,* 64 Ill. 406, on p. 414.) In *Schmidt* v. *Schmidt,* 29 N. J. Eq. 496, the court said: "The divorce petition is not evidence of any fact stated in it. To permit parties in divorce suits to establish, merely by the allegations and corresponding admissions of bill or petition and answer, the facts which are necessary to give the court jurisdiction, would be to practically annul important provisions of the law, and leave to simple, unverified (and perhaps fraudulently collusive) averment and admission, facts which the legislature intended should be established by proof." In *Beazley* v. *Beazley,* 3 Haggard's Eccl. 639, in discussing whether or not a former divorce of one of the parties should have been pleaded, it was said: "If a fact of such magnitude had been suppressed, any sentence pronounced by the court * * * would not have been finally binding. * * * Such suppression would have rendered all the proceedings liable to impeachment. An endeavor to obtain a sentence when such material information was withheld would be unfair to the court and prejudicial to the due administration of justice." This court, in *Dunham* v. *Dunham, supra,* held that when the wife, upon a separation from her husband, goes to another State for the purpose of obtaining a divorce, and brings a suit there for that purpose without disclosing the fact that a suit is pending in this State involving the same matters, she is guilty of such fraud and deception as to invalidate the decree of divorce obtained by her in such other State. Surely the law and decisions on

these questions were well known to an attorney of more than twenty years' practice.

Counsel for respondent have cited three cases in support of their argument, *Gerber* v. *Gerber,* 155 Ill. 219, *Evans* v. *Woodsworth,* 213 id. 404, and *Wagoner* v. *Wagoner,* 76 Md. 311, none of which sustain their position. In *Gerber* v. *Gerber* the wife sought a divorce for cruelty, and in her bill alleged that she had previously filed a bill asking a divorce for cruelty but on the defendant's promise to treat her properly dismissed her bill and consented to live with him, but he again abused her and kicked her in the stomach. There was nothing to show that there was any answer to the bill or whether the dismissal was without prejudice or not, nor was there anything to show any adjudication. The answer to the second bill denied the acts of cruelty and there was a hearing. The court said that if there was such a dismissal as was a bar to the bill it should have been set up by answer and proved to constitute a defense. That was a contested case, and as the record showed no former adjudication and contained nothing from which an inference of that kind could be drawn, the statement was not improper so far as the contesting parties were concerned, but it would not affect the question of fraud by either party in not disclosing an actual existing fact or affect the action of the court in protecting the public interest. In *Evans* v. *Woodsworth* a bill for divorce had been dismissed and afterward a second bill was filed for the same cause, and upon default and hearing a decree of divorce was rendered against the husband. Some two and a half years later, the complainant having died in the meantime leaving property in which the husband claimed an interest, he filed a bill to set the divorce aside on the ground of fraud. The court said that the question of former adjudication was not presented in that case because the bill failed to set it up as a ground for relief, and, moreover, if the question were open it was impossible to tell from the record whether the decree

on the first bill was a bar to the other or not. The decision is therefore not in point. In *Wagoner* v. *Wagoner* pleas were filed setting up a former adjudication. The court held that the lack of an affidavit required by the code of Maryland made the pleas defective, and that the motion of the plaintiff to strike them out should have been sustained and the pleas would then have been amended, but for the error of the court in disregarding the plaintiff's motion the decree was reversed.

A decree dismissing a bill for divorce upon a hearing is a final decree. The parties have no right again to litigate the matters involved in that suit, and by filing a new bill try different judges until they find one who agrees with them upon the facts. The public are also interested in the finality of a decree. Neither is it consistent with the authority and dignity of the courts or of proper administration of justice that parties desiring divorce may, after their cause has been heard and determined, successively file the same bill and submit the same evidence to all the judges of the various courts having jurisdiction until one of them shall grant the relief sought. It would be the duty of the court before whom such a bill is filed after having been heard and dismissed in a court of co-ordinate jurisdiction, at once to dismiss the bill upon learning of the prior adjudication, whether it was pleaded or not. The filing of a bill in such a case is a fraudulent imposition on the court.

In this case it is manifest that both parties desired divorce. The hearing before Judge Barnes in the superior court and the dismissal of the bill were on Saturday. On the following Monday the bill was filed in the circuit court. On Tuesday the appearance of the defendant was entered and an answer filed, and on Friday the cause was brought to a hearing as if it were a bill filed in good faith for the adjudication of the rights of the parties, solicitors appearing for each party but neither advising the chancellor of the facts, which would have shown that the status of the par-

ties upon the matters shown had already been determined. While the conduct of the parties was not collusion in the legal sense, as applied in the divorce law, it was reprehensible conduct on the part of both the solicitors thus to induce the chancellor to take jurisdiction of a case which he would not have considered if informed of the truth.

The conversation which took place between Judge Stough and the respondent does not help the matter. The respondent knew that the decree was final and he at least felt some doubt about the propriety of his action. If he had any communication to make to Judge Stough in regard to the merits of the case it should have been addressed to him in open court. Respondent had no right to attempt an explanation to the judge out of court, and the judge, with a proper sense of his position in the matter, declined to hear any talk about the case. The matter was not presented in court, where alone it could be considered. The respondent's conduct is not capable of an innocent construction. His failure to disclose the former adjudication, which he knew was final, was not consistent with the good faith and fair dealing which is required to be observed by members of the bar toward the courts in which they practice. The argument that he was not acting from corrupt motives or for wrongful purposes, but in accordance with his understanding of the law, is not justified by the facts. His motive is to be determined by what he did. He did not testify before the commissioner, but it is not consistent with his statement to Judge Stough that he was going to tell him out of court about the former adjudication, for counsel to say that he did not understand that such was his duty. He could not have been ignorant of the legal effect of the first decree, and the natural inference is that if Judge Stough would not hear the case when he knew the facts he would have sought another judge. If he stated the fact in court he would take the risk of having the bill dismissed, and he did not state it. His motive was to obtain a divorce for

his client, and with a complaisant solicitor representing the defendant and desirous of the same result he knew that the knowledge of the former adjudication, which was a bar to his suit, had not and would not come to the knowledge of the chancellor. We are not willing to set up or endorse such a standard of the duty of an attorney holding our license to practice in courts of justice as is contended for by respondent and approved by the commissioner.

The exceptions are sustained, and it is ordered that the respondent, Theodore G. Case, be suspended from practicing as an attorney in this and all other courts of record of this State for the term of one year from the entry of judgment under this order.          *Respondent suspended.*

Mr. CHIEF JUSTICE FARMER, dissenting:

I cannot assent to the judgment in this case. In my opinion respondent should have been disbarred or the rule discharged. The opinion concedes that disbarment was not justified but by way of discipline suspends respondent for one year. I agree with the conclusion that the proof did not justify disbarment but I do not agree that it justified suspension. The whole question of respondent's guilt is one of motive, and I agree with the commissioner that the proof failed to establish any corrupt motive on the part of the respondent. Furthermore, I am opposed to the establishment of a precedent of suspension in disbarment cases. Where an attorney is proven guilty of conduct that justifies suspension for a year, it is my opinion it would not only justify but would require disbarment.

Mr. JUSTICE VICKERS: I concur in the dissenting opinion of Mr. Chief Justice FARMER.