(No. 61411.—)

*In re* JOHN A. BETTS, Attorney, Respondent.

*Opinion filed October 3, 1985.—Rehearing
denied December 11, 1985.*

156

158

RYAN, J., took no part.

Daniel Drake, of Springfield, for the Administrator of

the Attorney Registration and Disciplinary Commission.

Peter F. Ferracuti, of Ottawa, for respondent.

JUSTICE MORAN delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission filed a complaint charging respondent, John A. Betts, with professional misconduct. The charges stem from respondent's participation in a conservatorship proceeding. The complaint alleged that respondent knowingly made false statements in the filing of a petition for conservatorship; that he knowingly created false evidence; and that he engaged in conduct involving dishonesty, deceit and misrepresentation. The Hearing Board found respondent guilty of the above charges and recommended that he be suspended from the practice of law for a period of one year. Both the Administrator and respondent filed exceptions with the Review Board. The Review Board concluded that the Administrator had not proved the charges by clear and convincing evidence and recommended that the complaint be dismissed. (94 Ill. 2d R. 753(e)(3).) We granted the Administrator's petition for leave to file exceptions to the report and recommendation of the Review Board. 94 Ill. 2d R. 753(e)(6).

At issue is whether the charges of misconduct were proved by clear and convincing evidence. Additionally, respondent contends that he was denied a fair hearing, in part, because the Hearing Board conducted hearings over a seven-week period instead of on a continuous basis in violation of Rule 9.1 of the Rules of the Attorney Registration and Disciplinary Commission. (Ill. Rev. Stat. 1981, ch. 110A, following par. 771.) He also maintains that members of the Hearing Board represented clients with adverse interests to those of respondent in civil matters related to the charges in this proceeding,

and that the hearing panel erroneously precluded respondent from introducing certain evidence.

The relevant facts are as follows. Respondent was admitted to the Illinois bar in October 1975. Soon thereafter he began representing Lyle and Robert Weber in various business and real estate transactions. The Webers owned a realty company. In March 1978, respondent, on behalf of the Webers and himself, approached Emil Knutson and inquired whether Knutson's property was for sale. The Webers and respondent were interested in developing a residential subdivision on Knutson's property, a 20-acre tract in La Salle County. According to Lyle Weber, respondent was to provide all the legal services involved in purchasing and subdividing the parcel in return for a one-third interest in the subdivision project.

Knutson, who was then 79 years old, had lived on the property for most of his life. His only source of income consisted of benefits from a pension and social security amounting to approximately $600 a month. According to respondent, the only structure on the property was an "old ramshackle beaten-down building." After viewing the property, respondent inquired whether the property was for sale. Knutson offered to sell the property for $500 an acre, or $10,000.

Respondent thereafter discussed the possible purchase with the Webers. They agreed with respondent that Knutson's asking price of $10,000 was acceptable and directed respondent to prepare a title report on the property. The title search revealed that Knutson owned approximately a 51% interest in the property. The other owners were relatives of Knutson. According to respondent, Knutson denied knowing the whereabouts of any of his relatives. However, Knutson testified that he told respondent that he had a niece who lived in California, and another who lived in Chicago.

Upon discovering Knutson's fractional interest, respondent stated that he attempted to locate the other owners. By examining records in the township assessor's office, respondent found the name and address of Carol Mitchell, a niece of Knutson who lived in California. Mitchell did not have an interest in the property at that time. She testified, however, that Knutson had promised to devise the property to her in his will. Respondent called Mitchell on March 19, 1978, regarding the whereabouts of any relatives who might have had an ownership interest in the property. Mitchell told respondent that he could not purchase the property because Knutson was not the sole owner. She refused to give him the addresses of any relatives. Respondent testified, however, that he learned from their conversation that only two other relatives—Mary and Edward Knutson—had a substantial interest in the property. Respondent also learned from Mitchell that these two relatives lived near Dixon, Illinois. In an effort to locate Edward and Mary Knutson, respondent called directory assistance and the Dixon, Illinois, police department. Both attempts were unsuccessful. Thereafter, on March 26, 1978, respondent again called Mitchell and requested that she furnish him with the addresses of relatives having an interest in the property. Mitchell refused.

On March 29, 1978, respondent, along with the Webers, purchased Knutson's interest for the agreed price. As part of the agreement, the Webers also paid $1,000 in real estate taxes due on the property. In addition, the quitclaim deed from Knutson to Lyle Weber reserved to Knutson the "[r]ight *** to retain use of the East 150 feet of the Real Estate *** for his lifetime or until his abandonment of the premises whichever comes first." Subsequently Weber conveyed title to the parcel by warranty deed to the First National Bank of Ottawa in trust. Respondent was named the sole beneficiary. A title

insurance policy was issued in the name of the trustee, and "John Betts owner of property[.] Development contract among Lyle P. Weber, Robert F. Weber & John Betts."

Prior to the purchase, police had investigated several disturbances on the Knutson property. The evidence introduced at respondent's hearing showed that the number of disturbances on the property increased significantly after the March 1978 conveyance. The evidence also showed that Knutson's living conditions were substandard.

Tom Templeton, a La Salle County deputy sheriff, testified that he visited Knutson's residence in the fall of 1978. Upon entering Knutson's trailer he found several persons, including Knutson, unconscious on the floor. According to Templeton, all of the persons in the trailer had been drinking. He observed garbage strewn about the trailer, and human excrement on the floor. The trailer smelled of sewage. He testified that a hole cut in the corner of the trailer was being used as a toilet.

David Keller, chief of police of the Seneca police department, testified that he had responded to several disturbance calls on the property. On each occasion he said that Knutson appeared to have been intoxicated. Several other law-enforcement officials testified about the conditions and disturbances on the Knutson property. They testified that the property had become a center for certain undesirable young people. They also testified that they had received complaints from neighbors about noise, drinking, fighting, and the use of firearms on the property.

The numerous complaints about the disturbances and conditions on the property culminated in a meeting attended by the La Salle County State's Attorney, respondent, the Webers, and several of Knutson's neighbors. The State's Attorney testified at respondent's

hearing that he suggested that a conservatorship for Knutson be considered as a solution to the problem. He also suggested that respondent employ John W. Hardin III, a local attorney, to institute the conservatorship proceeding.

Respondent contacted Hardin on September 22, 1978, and inquired whether Hardin would be interested in serving as conservator. After meeting with Knutson and observing his living conditions, Hardin agreed to represent respondent in the conservatorship proceeding. Thereafter, Hardin requested a hearing and assistance for Knutson from the Manlius Township Health Board.

On October 2, 1978, respondent asked Dr. Terrance W. Love, a physician, to accompany him to the Knutson property for the purpose of making an examination. Dr. Love testified that his examination consisted solely of history taking, interrogation, and close observation of Knutson and Knutson's living conditions. He left his medical instruments in the car at the request of respondent, who stated that he believed Knutson would become belligerent if the purpose of the visit was made known to him. Once inside Knutson's trailer, Dr. Love discovered that it was filled with garbage and infested with rodents. Both the trailer and Knutson's clothing smelled of urine. Dr. Love also observed that the trailer lacked plumbing, electricity, water or a telephone. A woodburning stove in the trailer did not function. There was no food in the trailer.

Dr. Love also testified that Knutson appeared to suffer from several physical ailments, including a severe eye irritation, a fungal infection in the fingernails, enlarged joints in the fingers, and clubbing, which indicated a lung problem. Dr. Love observed that Knutson suffered unintentional tremors in his hands, a symptom he attributed to parkinsonism or alcoholism. Respondent subsequently prepared an affidavit signed by Dr. Love

which stated that it was Dr. Love's opinion that Knutson was "physically and mentally incapable of managing his personal estate and his person within the meaning prescribed" by Illinois law.

The Manlius Township Health Board conducted a hearing on October 6. Knutson, respondent, and Hardin were present at the hearing. The Board discovered that Knutson had spent the $10,000 he had received in March for the sale of his property. The Board also discovered that Knutson had spent all but $1.47 of his monthly pension and social security benefits within three days of their receipt, leaving him without any source of income for nearly a month. The Health Board determined that Knutson's "health condition and the physical condition of his living quarters *** indicate that he needs supervision in daily living habits." Following the hearing, respondent and Hardin filed a verified petition for conservatorship. The petition was accompanied by Dr. Love's affidavit.

A hearing was held on respondent's petition on October 11, 1978, in the circuit court of La Salle County. Respondent, Hardin and Knutson were present at the hearing. Attorney Stephen J. West, who respondent had asked that morning to serve as guardian *ad litem*, also was in attendance. At the conclusion of the hearing, Knutson was declared incompetent and Hardin was appointed conservator. Hardin then requested a writ of assistance, which was granted. That evening sheriff's deputies removed Knutson to a nursing home. Hardin testified that he requested a writ of assistance because Knutson threatened to run away.

The next day, the Webers paid respondent $10,000 for legal services and respondent's interest in the property. Respondent amended the land trust to transfer the beneficial interest to the Webers.

On October 16, 1978, Stephen West, Knutson's guardian *ad litem*, filed a petition to remove the conservator.

West testified that prior to the October 11 conservatorship hearing, respondent had represented to him that Knutson did not own any real property or have any relatives. West said that he also was unaware of respondent's beneficial interest in the land trust before the October 11 hearing. Upon discovering this information, he filed the petition to remove the conservator. Hardin voluntarily resigned as conservator on October 19, and a new conservator was appointed on October 23. Thereafter, on November 9, West filed a petition to vacate the October 11 order of incompetency. Following a hearing on December 1, the trial court determined that the petition for conservatorship prepared by respondent was "based on misleading allegations and conclusions not substantiated by fact," and vacated the October 11 order of incompetency.

Knutson subsequently filed a petition pursuant to section 41 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 41, now Ill. Rev. Stat. 1983, ch. 110, par. 2— 611), requesting that costs and attorney fees be assessed against respondent. The trial court determined that allegations contained in the verified petition for conservatorship prepared by respondent were false and made without reasonable cause. It assessed $2,058.75 in fees and costs against respondent. The trial court's fee award was upheld by the appellate court. *In re Estate of Knutson* (1980), 83 Ill. App. 3d 907.

The gravamen of the Administrator's complaint concerns two statements contained in respondent's verified petition requesting that a conservator be appointed for Knutson and a statement contained in the "physician's affidavit," prepared by respondent and signed by Dr. Love. The "physician's affidavit" was prepared in conjunction with the petition for conservatorship.

At the time respondent prepared the petition for conservatorship, the requirements for such petitions were

set forth in section 11—9 of the Probate Act of 1975. (Ill. Rev. Stat. 1977, ch. 110½, par. 11—9.) That section provided:

> "The petition for adjudication of incompetency and appointment of a conservator of the person or of the estate of an alleged incompetent must state, if known: (a) the name and place of residence of the alleged incompetent; (b) the names and post office addresses of the nearest relatives of the alleged incompetent in the following order: (1) the spouse and adult children, if any; if none, (2) the parents and adult brothers and sisters, if any; if none, (3) the nearest adult kindred; (c) the reasons for the conservatorship, (d) the approximate value of the personal estate, (e) the amount of the anticipated gross annual income and other receipts, (f) the name and post office address of the proposed conservator and of any conservator designated by the alleged incompetent pursuant to Section 11—4 and, in the case of an individual, his age and occupation. A petition for the adjudication of incompetency and appointment of a conservator may not be dismissed or withdrawn without leave of the court in which it is filed. Ill. Rev. Stat. 1977, ch. 110½, par. 11—9.

The verified petition for conservatorship prepared by respondent stated in part:

> "2. That to the best of the Petitioner's [respondent's] knowledge that [sic] there are no living relatives of the alleged incompetent in the State of Illinois. ***
>
> 4. *** to the best of the Petitioner's knowledge the incompetent owns no real estate in La Salle County or Illinois."

The "physician's affidavit," prepared by respondent and signed by Dr. Love, stated in relevant part:

> "2. On October 2, 1978, I examined EMIL J. KNUTSON."

The Hearing Board determined that respondent was guilty of the charged misconduct, and it recommended that he be suspended from the practice of law for one

year. The Review Board concluded that the Hearing Board's findings were not established by clear and convincing evidence as required by our Rule 753(c) (87 Ill. 2d R. 753(c); *In re Woldman* (1983), 98 Ill. 2d 248, 254; *In re Bossov* (1975), 60 Ill. 2d 439, 441). It recommended that the complaint be dismissed.

Before we consider the charges of misconduct filed by the Administrator, we address respondent's argument that certain alleged errors below deprived him of a fair hearing.

Respondent first argues that he was denied a fair hearing because the Hearing Board conducted hearings over a seven-week period instead of on a continuous basis in violation of Rule 9.1 of the rules of the Attorney Registration and Disciplinary Commission. (Ill. Rev. Stat. 1981, ch. 110A, following par. 771.) Rule 9.1 provided:

> "Hearings on complaints shall be continuous from day to day until the taking of evidence is completed. Hearings may be held on Saturdays." Ill. Rev. Stat. 1981, ch. 110A, following par. 771.

The record shows that the hearings were held before a panel of the Hearing Board on June 2 and June 3, 1983, and thereafter on June 24 and July 18, 1983. At the close of hearings on June 3, the chairman of the Hearing Board panel suggested that the hearing be continued on agreement of the parties. Respondent's counsel made no objection. Following testimony on June 24, respondent's counsel agreed to a continuance. Because respondent failed to object to the first continuance and did in fact agree to the second continuance, we hold that he has waived this issue. We note that even if respondent had not waived the issue, the failure of the Hearing Board panel to conduct continuous hearings would not deprive this court of the right or power to further consider the charges against respondent. Technical objec-

tions concerning the practice and procedures before the hearing and review boards will not "bind us or limit our authority to act." (*In re Mitan* (1979), 75 Ill. 2d 118, 124; *In re Czachorski* (1969), 41 Ill. 2d 549, 554.) Moreover, our review of the record convinces us that respondent was not prejudiced by the delay. We therefore reject respondent's first assignment of error.

Respondent next contends that the Hearing Board erred in refusing to admit an exhibit tendered by him. The exhibit was a copy of a judgment order entered by the La Salle County circuit court in a case entitled Hardin v. Ottawa Publishing Co. 79—L—392, finding that certain statements published by the Ottawa Publishing Company regarding attorney John Hardin were libelous. The statements allegedly concerned Hardin's participation in Knutson's conservatorship proceeding. When offered at respondent's disciplinary hearing, the exhibit was objected to on the grounds of relevance. We agree with the Administrator that the Hearing Board properly rejected the exhibit. The exhibit concerned a judgment obtained by Hardin, not respondent, and has no bearing on whether respondent engaged in professional misconduct.

Respondent also alleges that members of the Hearing Board represented clients with interests which are adverse to those of respondent in civil matters related to the charges in this proceeding. He thus argues that he was denied a hearing before an impartial tribunal.

Respondent was certainly entitled to a hearing before an impartial tribunal. Whenever a Hearing Board member has an interest, financial or otherwise, in the subject matter of the proceeding, the member must recuse himself. (*In re Heirich* (1956), 10 Ill. 2d 357, 384-85.) If there was evidence that a member of the Hearing Board panel in this case had an interest which conflicted with respondent's, the court would not hesitate to order a

new hearing. However, there is no evidence whatsoever establishing that a member of the Hearing Board panel represented a client with interests adverse to those of respondent, or that a member of the panel was personally interested in the outcome of the proceeding. We will not order a new hearing on the basis of mere allegations contained in respondent's brief. Therefore, we reject the contention that respondent was denied a hearing before an impartial tribunal.

Respondent alleges that certain actions of the Administrator constituted prosecutorial misconduct and thus deprived him of due process. The first allegation of misconduct concerns the Administrator's failure to deliver a copy of the complaint to the chairman of the relevant Inquiry Board panel as required by Rule 4.2 of the rules of the Attorney Registration and Disciplinary Commission. (Ill. Rev. Stat. 1981, ch. 110A, following par. 771.) Rule 4.2 provided:

> "The complaint shall be prepared by the Administrator. A copy shall be filed by him with the Hearing Board. A copy of the complaint shall concurrently be filed with the Chairman of the Inquiry Panel which voted the complaint." (Ill. Rev. Stat. 1981, ch. 110A, following par. 771.)

Rule 4.2 was promulgated in accordance with Supreme Court Rule 753. (87 Ill. 2d R. 753.) Rule 753(a) provides in part that charges of misconduct are to be investigated and considered by an Inquiry Board. The Inquiry Board may vote to dismiss a charge, discontinue an investigation undertaken on its own motion, or file a complaint with the Hearing Board. (87 Ill. 2d R. 753(a).) Rule 753(b) (87 Ill. 2d R. 753(b)) states:

> "A complaint voted by the Inquiry Board shall be prepared by the Administrator and filed with the Hearing Board. The complaint shall reasonably inform the attorney of the acts of misconduct he is alleged to have committed."

The court, in *In re Mitan* (1979), 75 Ill. 2d 118, examined the purpose of Rules 753(a) and (b). The court stated the following:

"The purpose of our Rules 753(a) and (b) is to prevent the Administrator from acting solely on his own in an arbitrary or dictatorial manner. The attorney-respondent is given the protection of having to answer charges only when they have been made by the Inquiry Board after it has considered the facts upon which they are based independently of prosecutorial interests of the Administrator." 75 Ill. 2d 118, 126.

The record in the present case indicates that the Inquiry Board voted to file a complaint against respondent on March 1, 1980, but stayed the filing of the complaint until a related civil suit involving respondent was completed. The complaint was filed by the Administrator on September 29, 1982. A copy of the complaint was filed with the Hearing Board. Respondent also was served with a copy of the complaint. The record thus shows that the Administrator fully complied with Rules 753(a) and (b) and provided respondent with all the protections required. Respondent argues, however, that Rule 4.2 of the rules of the Attorney Registration and Disciplinary Commission additionally required a copy of the complaint to be filed with the chairman of the appropriate Inquiry Board panel, and the Administrator's failure to do so constituted prosecutorial misconduct. Respondent's argument is without merit. Rule 4.2 is a procedural rule of the Commission and does not limit this court's authority to act. (*In re Mitan* (1979), 75 Ill. 2d 118, 124.) At most, the Administrator's conduct amounted to a technical oversight. Since respondent was provided with all the protections required by Rules 753(a) and (b) he was not denied due process.

The second allegation of prosecutorial misconduct concerns a letter from the Administrator to members of

the Hearing Board panel, following completion of respondent's hearing. The letter, dated December 29, 1983, reminded panel members that respondent's hearing had been completed on July 18, 1983, and requested that they quickly prepare the Hearing Board's report and recommendation. The letter recited Rule 9.2 of the rules of the Attorney Registration and Disciplinary Commission (Ill. Rev. Stat. 1981, ch. 110A, following par. 771), which provided for the expeditious preparation of Hearing Board reports and recommendations. The letter is signed by the Administrator. Below the Administrator's signature, in handwritten form, is the following message: "Gentlemen—Please!" The message is followed by the Administrator's initials.

Respondent contends that this *ex parte* communication with members of the the Hearing Board panel, particularly the handwritten message, was improper and constituted prosecutorial misconduct. We disagree. The letter did not address the merits of respondent's case, but only urged members of the Hearing Board panel to comply with Rule 9.2 and quickly prepare the panel's report and recommendation. We find nothing improper with the contents of the letter. Moreover, we do not, unlike respondent, attribute any significance to the phrase, "Gentlemen—Please!" We interpret it to be nothing more than an additional exhortation to panel members to quickly prepare and file the report. Respondent was in no way prejudiced by the letter.

Next, we address the charges of misconduct. The first statement in the petition for conservatorship which is alleged to be false and misleading concerns the existence of Knutson's relatives. The petition stated: "That to the best of the Petitioner's [respondent's] knowledge that there are no living relatives of the alleged incompetent in the State of Illinois."

The evidence shows that respondent conducted a title

search on the Knutson property in March 1978. The title search disclosed that Knutson owned only a fractional interest in the subject property and that the other owners were Knutson's relatives. Respondent testified that Knutson denied knowing the whereabouts of any relatives. That fact was disputed by Knutson, who testified that he told respondent that he had a niece who lived in Chicago and another who lived in California. Respondent also testified that, by examining records in the township assessor's office, he discovered that Knutson had a niece, named Carol Mitchell, who lived in California. According to respondent, Mitchell refused to give him any information concerning the whereabouts of Knutson's relatives except to say that two relatives—Edward and Mary Knutson—lived near Dixon. Respondent called directory assistance and the Dixon police department in an effort to locate Mary and Edward Knutson, but these efforts were unsuccessful. A second call to Mitchell was made, but again she refused to give respondent any information concerning the whereabouts of Knutson's relatives.

Mitchell corroborated the fact that respondent had contacted her on several occasions and that she refused to provide him with the addresses of Knutson's relatives. She also testified that respondent specifically inquired as to the whereabouts of several of Knutson's relatives, including Hazel, Mary and Edward Knutson; Lois Burman; and John and Fred Swanson.

The Hearing Board concluded that respondent made a knowing misstatement regarding the existence of Knutson's relatives. Testimony concerning this matter was conflicting. This court has repeatedly stated that the "resolution of conflicting testimony is best resolved by the hearing panel, since it had the advantage of observing the witnesses." (*In re Chernoff* (1982), 91 Ill. 2d 316, 323. See also *In re Schneider* (1983), 98 Ill. 2d 215, 221;

*In re Hopper* (1981), 85 Ill. 2d 318, 323.) The Hearing Board's findings are entitled to substantially the same weight as any initial trier of fact. (*In re Feldman* (1982), 89 Ill. 2d 7, 10.) We have reviewed the record, and find substantial support for the Hearing Board's finding on this issue.

Moreover, we believe that respondent's statement concerning the existence of relatives was untrue and misleading in another respect. The statute governing conservatorship proceedings required the petition to contain: "(b) the names and post office addresses of the nearest relatives of the alleged incompetent in the following order: (1) the spouse and adult children, if any; if none, (2) the parents and adult brothers and sisters, if any; if none, (3) the nearest adult kindred ***." (Ill. Rev. Stat. 1977, ch. 110½, par. 11—9.) Thus, respondent was required to list, if known, the nearest adult kindred, not just the names of relatives who lived in Illinois. It is undisputed that respondent was aware of the existence of Mitchell, Knutson's niece, at the time he prepared the petition for conservatorship. He was required to list her name and address in the petition.

We also find substantial support in the record for the Hearing Board's finding that the statement "the incompetent owns no real estate in La Salle County or Illinois" was false and misleading. It is undisputed that Knutson had a life estate in a portion of the 20-acre tract at the time the conservatorship petition was filed. Respondent prepared the deed reserving Knutson's life interest. Thus, the statement that Knutson "owns no real estate" was false and misleading. We do not agree with the argument advanced by respondent and adopted by the Review Board that a reasonable person, in preparing the petition, could believe that the term "own" only "contemplates a fee interest." Respondent, as an attorney, was well aware that a life estate constitutes a

legal interest in land.

The Hearing Board also determined that a statement contained in the physician's affidavit prepared by respondent and signed by Dr. Terrance W. Love constituted a knowing creation of false evidence. The allegedly false statement was, "On October 2, 1978, I examined EMIL J. KNUTSON." After reviewing the record, we agree with the Review Board that the Hearing Board's findings as to this issue are not supported by clear and convincing evidence. Dr. Love testified that he examined Knutson at the latter's home on October 2, 1978. He testified that his examination consisted solely of history taking, interrogation, and close observation of Knutson and Knutson's living conditions. Based on this examination, Dr. Love testified that it was his opinion that Knutson was "physically and mentally incapable of managing his personal estate and person within the meaning prescribed" by Illinois law. The Administrator argues that the examination performed by Dr. Love was not a "physical" examination, such as the type that would be performed in a physician's office. He thus contends that the claim by Dr. Love that he "examined" Knutson constitutes a knowing falsity. We disagree. Dr. Love's affidavit does not claim that he performed a physical examination as that term is defined by the Administrator. All of the findings contained in the physician's affidavit could be determined by the type of examination performed by Dr. Love. Moreover, none of the supporting facts in the affidavit are alleged to be untrue. We therefore reject the Hearing Board's finding on this issue as not being supported by clear and convincing evidence.

We are aware of the decision in *In re Estate of Knutson* (1980), 83 Ill. App. 3d 907, wherein the appellate court affirmed the trial court's assessment of attorney fees against this respondent based in part on a finding that the statement in the physician's affidavit that Dr.

Love "examined" Knutson was false. However, the standard of proof in that case was by a preponderance of the evidence. Charges of attorney misconduct must be proved by the higher standard of clear and convincing evidence. (87 Ill. 2d R. 753(c); *In re Woldman* (1983), 98 Ill. 2d 248, 254.) Moreover, the appellate court found, as do we, that Dr. Love did in fact observe Knutson (*In re Estate of Knutson* (1980), 83 Ill. App. 3d 907, 910). The appellate court's finding that the affidavit was false was based on its belief that the examination did not qualify as a "medical" examination. We have already rejected that argument as being without merit. The affidavit did not claim or infer that Dr. Love performed a medical or physical examination. The evidence is undisputed that Dr. Love performed an oral and visual examination of Knutson and Knutson's living conditions. As the Review Board correctly observed, the Administrator was free to challenge Dr. Love's credibility and the thoroughness of the doctor's examination, but was obligated to prove by clear and convincing evidence that the physician's affidavit was false. We find that the allegation that the physician's affidavit was false was not proved by clear and convincing evidence.

In determining the sanction that should be imposed in this case, we take into account the fact that nothing in the law prevented respondent from serving as petitioner in Knutson's conservatorship proceeding. Although respondent had a financial interest in the Knutson property and could have possibly benefited from Knutson's removal from the property, the statute only required a petitioner in such proceedings to be a "reputable citizen of this State." (Ill. Rev. Stat. 1977, ch. 110½, par. 11—4.) It did not prohibit interested parties from serving as petitioners. We also find substantial support in the record for the Hearing Board's finding that Knutson was an "elderly person, of questionable mental competency,

and apparently living in extremely substandard conditions ***." Furthermore, the statements contained in the petition which were untrue and misleading did not directly concern Knutson's competency. As such, we are of the opinion that respondent's actions fell short of perpetrating a fraud on the court. Therefore, we do not believe that the sanction of disbarment, which was recommended by the Administrator, is warranted.

Nevertheless, we do not think that respondent's conduct comported with accepted professional standards. The untrue allegations in the petition concerning relatives and ownership of property tended to support the allegation of incompetency in that they diverted the trial judge from questioning respondent's credibility and the believability of respondent's evidence. The record shows that Mitchell was hostile to respondent's attempt to purchase the Knutson property, and certainly would have opposed the appointment of a conservator for her uncle had she been notified of the hearing. Respondent's statement regarding relatives ensured that Mitchell was not notified of the competency hearing prior to its occurrence. The statement regarding Knutson's lack of ownership of real property was not required by the statute. (See Ill. Rev. Stat. 1977, ch. 110½, par. 11—9.) By stating to the court that Knutson owned no real estate, respondent avoided the disclosure of his own adverse property interest. The record shows that respondent never informed the trial court that he had an interest in the property. The record also indicates that Knutson's guardian *ad litem*, Stephen West, was never informed prior to the competency hearing that Knutson had a life estate in the property, that Knutson had relatives, or that respondent had a financial interest in the property. We find this to be particularly unacceptable in light of the fact that it was respondent who arranged for West to be the guardian *ad litem* the day of the hearing. Respondent's

lack of candor and truthfulness contributed to deprive an elderly man of his freedom and liberty. The fact that there was some basis for believing that a conservator was necessary for Knutson does not absolve the respondent of his wrongful conduct.

In mitigation, the record reveals that respondent began practicing as an attorney in 1976. He was unfamiliar with the practice and procedures connected with the filing of conservatorship petitions when the events under consideration here occurred in 1978. Respondent has not previously been subject to disciplinary action. Under the circumstances, we believe that the appropriate sanction is that respondent be suspended for a period of six months.

*Respondent suspended.*

JUSTICE RYAN took no part in the consideration or decision of this case.