(No. 63283.—

*In re* PAUL FREDERICK BRANER, Attorney, Respondent.

*Opinion filed January 30, 1987.*

Daniel Drake, of Springfield, for the Administrator of the Attorney Registration and Disciplinary Commission.

Patrick B. Mathis, of Mathis, Marifian & Richter, Ltd., of Belleville, for respondent.

JUSTICE SIMON delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission filed a complaint against the respondent, Paul Frederick Braner, charging misconduct resulting from his representation of James Booker in two separate proceedings before two different divisions—the probate division and the domestic division—of the circuit court of St. Clair County. The Administrator alleged that (1) the respondent failed to disclose perti-

nent information in both proceedings in violation of Canon 7 of the Illinois Code of Professional Responsibility, and (2) he defrauded and deceived the Illinois Department of Public Aid, James Booker's wife, Betty, who was mentally incompetent, and the court, in violation of Canon 1 of the Code.

The Hearing Board found respondent guilty of violating both canons and recommended disbarment. The Review Board affirmed these findings and also recommended disbarment. The matter is before us on the respondent's exceptions to the Review Board's recommendation.

The respondent was admitted to the Illinois bar in 1955. After two years in private practice, he became a trust officer for the Belleville National Savings Bank (the bank) and remained in that position until 1979. While a trust officer, the respondent was responsible for handling Betty Booker's conservatorship. Mrs. Booker had sustained permanent brain damage in an automobile accident and was confined to a nursing home. The bank was appointed conservator of her estate in 1974 after she had been declared incompetent by the circuit court of St. Clair County.

The estate consisted of a half interest in Mrs. Booker's marital residence, which she held in joint tenancy with her husband, James, and a judgment of $250,000 which the bank, as conservator, obtained against the driver who caused Mrs. Booker's injuries. Because of limitations in the driver's insurance coverage, only $10,000 was collected, and this sum was ultimately expended in later unsuccessful litigation against the insurance company. There was not enough money in Mrs. Booker's estate to pay her substantial medical bills, and her husband and the Department of Public Aid paid them. In 1979, the Department filed a $10,474.56 claim against the estate.

In 1982, after the respondent had left his position with the bank and had opened a private practice, James Booker asked the respondent to represent him in a dissolution-of-marriage action and a claim against his wife's estate for his payment of her medical bills. The respondent filed a petition in the probate court alleging that the estate owed Mr. Booker $25,200 and requesting that Mr. Booker's claim be given priority over any claim by a public source. The petition prayed that Mrs. Booker's interest in the marital residence be conveyed to Mr. Booker as reimbursement.

Although the respondent was aware that the Department of Public Aid had a claim against Mrs. Booker's estate, he neither served the Department with notice of the petition nor informed the court of the Department's claim. In addition, the respondent failed to notify Mrs. Booker or the bank, as her conservator, of the proceeding. On June 30, 1982, in an *ex parte* hearing, the court ordered Mrs. Booker's interest in the marital home transferred to Mr. Booker. This transfer left Mrs. Booker's estate with no assets.

Next, the respondent prepared a petition requesting that Mrs. Booker's conservatorship be terminated and that her civil and legal rights be restored. The respondent delivered the petition to the bank, and a trust officer at the bank signed and filed it with the probate court; on July 26, 1982, the court terminated the conservatorship and restored Mrs. Booker's civil and legal rights. The respondent, in explaining why he drafted the petition when he had not been employed by the bank for three years, merely stated that, had he not prepared the document, the bank would have neglected to close the conservatorship. On the same day that the court terminated Mrs. Booker's conservatorship, the respondent filed a verified petition on behalf of Mr. Booker for dissolution of marriage.

A few days later, on July 29, 1982, the probate court appointed a guardian *ad litem* for Mrs. Booker and gave the guardian 21 days to file a motion to reconsider the order transferring her interest in the marital home. Instead of filing such a motion, the guardian reported to the court on August 17, 1982, that Mrs. Booker's interest in the home was subject to a Department of Public Aid lien and that she would gain little benefit if the transfer were rescinded. The guardian therefore advised the court that in his opinion there was no need to nullify the transfer of her interest in the property. The record contains no explanation as to why the probate judge appointed the guardian *ad litem* and why neither the guardian nor the judge took any further action to protect the Department's interest in the property, or to notify the Department so that it could attempt, if it wished, to intervene in the proceeding.

On August 20, 1982, the respondent filed an unverified entry of appearance and consent in the dissolution proceeding bearing the purported signature of Mrs. Booker. He appeared on Mr. Booker's behalf on August 25, 1983, before a judge who had no reason to be aware of either Mrs. Booker's conservatorship proceedings or her impaired mental and physical condition. The respondent did not disclose this information, and the court dissolved the marriage without being advised by the respondent that Mrs. Booker was still mentally incompetent and probably lacked the capacity to consent to a divorce. Mrs. Booker received nothing in the dissolution proceeding and was left with no anticipated income. Further, the Department could not recover on its claim because Mrs. Booker's only asset—her interest in the marital residence—had been transferred to her husband and the divorce left her with nothing.

The respondent asks that we reject the Hearing Board's finding that he violated his duty to disclose per-

tinent facts to the court in violation of Canon 7 of the Code of Professional Responsibility. He asserts that he did not inform the probate court of the Department's claim against the estate because he thought that the claim applied only against the insurance company and not against the estate. The evidence showed that the bank received notice of the claim against the estate, together with an attached copy of the notice of the claim against the insurance company. Inasmuch as the respondent admits having been notified of the Department's claim against the insurance company, it is difficult to understand how he could not have been notified at the same time of the claim against the estate, since both claims were attached when they were sent to the bank. At the very least, respondent concedes that he was aware of the benefits the Department had extended to Mrs. Booker. In view of this concession and the inclusion in his petition to the probate court of a prayer that Mr. Booker's claim receive priority over a claim from any "public source," any confidence in the respondent's assertion that he did not realize the Department was making a claim against the estate would be misplaced. The Hearing Board's finding that the respondent was aware of the Department's interest in the property and that the reference to priority "over any public source" was a deliberate attempt to defeat that claim against the estate is, therefore, based upon clear and convincing evidence.

The respondent next asserts that he did not violate his Canon 7 duty by failing to disclose at the dissolution proceeding that Mrs. Booker had diminished mental capacity. The respondent claims that he never actually met Mrs. Booker and had no firsthand knowledge of her mental impairment.

In his position as a trust officer at the bank, the respondent was in charge of Mrs. Booker's file, which con-

tained medical reports describing her mental incapacity. The respondent admitted when testifying before the Hearing Board that he had full knowledge of everything involved in Mrs. Booker's conservatorship, including "everything that was filed over my [the respondent's] signature." His admission requires us to conclude that the respondent had knowledge of everything in the bank's files, including the contents of the medical reports which were filed in Mrs. Booker's conservatorship proceeding. Respondent must therefore have been aware of her mental impairment.

In addition, respondent testified at Mrs. Booker's conservatorship hearing on February 21, 1974, that Mrs. Booker's "conversation is incoherent and repeated, talks like a kid." His awareness of her mental and physical handicaps also came from the estate's lawsuits against the driver who caused Mrs. Booker's accident and against the insurance company. These lawsuits were pending while he was at the bank. Whether respondent had firsthand knowledge of Mrs. Booker's condition is irrelevant. What knowledge respondent had was clearly enough both to alert him to Mrs. Booker's impaired condition and create a duty to disclose this information to the court.

The respondent further argues that he had no duty to inform the court during the course of the dissolution proceeding that Mrs. Booker's property had recently been transferred and her conservatorship terminated. The respondent insists that because these proceedings were before the probate division of the St. Clair County circuit court, the information was readily available to another judge in the dissolution proceeding and thus disclosure was unnecessary.

Whether the judge in the dissolution proceeding could have discovered this information (if he had any reason to search for it) is also irrelevant. (See *People ex rel. Healy*

*v. Case* (1909), 241 Ill. 279.) A lawyer's "high vocation is to correctly inform the court upon the law and the facts of the case and to aid it in doing justice and arriving at correct conclusions." (241 Ill. 279, 283-84, quoting *People v. Beattie* (1891), 137 Ill. 553, 574; see also *In re Thebeau* (1986), 111 Ill. 2d 251, 254-56; *In re Reynolds* (1965), 32 Ill. 2d 331, 336.) We agree with the Hearing Board that the dissolution proceeding demonstrates "an almost incredible violation of the requirement of disclosure of all material facts to the court."

Before the Review Board, respondent argued that he had not breached his fiduciary duty to Mrs. Booker because his duty terminated when he left the bank. We reject this argument as did the Review Board. In *People ex rel. Daley v. Warren Motors, Inc.* (1986), 114 Ill. 2d 305, 318-19, we held that a public official may breach a fiduciary duty even when he is no longer employed by the public body at the time of the breach. *Warren Motors* concerned a former deputy commissioner of the Cook County board of appeals who fraudulently reduced tax assessments by entering the board's office after hours and altering tax records. This court concluded that the former commissioner breached his fiduciary duty to the board even though he was no longer employed by it because the reduction "was accomplished through [his] experience as a deputy commissioner and his access to the office's records." 114 Ill. 2d 305, 315.

As in *Warren Motors*, the respondent used information gained in his former position as a trust officer with the bank to exploit Mrs. Booker. The respondent's knowledge of Mrs. Booker's mental and physical condition, and his knowledge of her assets and liabilities, enabled him to institute proceedings which ultimately culminated in her loss of property and her divorce, as well as loss of her rights to future income. Had the respondent not been previously employed by the bank, we doubt

that he would have been able to arrange for the bank to file the petition he drafted terminating Mrs. Booker's conservatorship. We therefore conclude that the respondent's exploitation of the information regarding Mrs. Booker and her handicap gained through his former position with the bank breached a fiduciary duty to Mrs. Booker.

Instead of an innocent act, as the respondent portrays his conduct in drafting the petition and arranging for the bank to file it, this was an essential part of his scheme to further his own interest as an attorney and the interest of his client, Mr. Booker, in obtaining a divorce and defrauding an incompetent woman of her share of marital assets. By terminating the conservatorship the respondent succeeded in restoring Mrs. Booker's legal and civil rights, thus making it possible for him to present to the court what appeared to be Mrs. Booker's consent to the dissolution of her marriage.

The respondent also requests that we reject the Hearing Board's finding that he violated the Code of Professional Responsibility by failing to serve the Department of Public Aid with notice of the probate proceeding which transferred the estate's interest in the property to Mr. Booker. The respondent insists that he did not harm the Department because it never attempted to rescind the transfer. Whether the Department could have rescinded this transfer has not been briefed and is not before this court. The fact, however, remains that, by failing to serve the Department with notice of the transfer proceeding, the respondent deprived the Department of the opportunity to protect its interest in Mrs. Booker's property. The respondent's attempt to brush over this deliberate omission by arguing that the Department failed to take steps to reclaim an interest it rightfully held does not reduce the respondent's culpability.

Finally, the respondent requests that we reject the

Hearing Board's conclusion that his conduct constitutes intentional fraud and deceit in violation of Canon 1 of the Code of Professional Responsibility because the Administrator failed to show motive or intent. If any harm was done, the respondent contends, it was due to poor judgment. "Motive and intent are rarely the subject of direct testimony; they must ordinarily be inferred from conduct and from the circumstances under which that conduct took place." (*In re Schwarz* (1972), 51 Ill. 2d 334, 336.) "Where the question is the credibility of witnesses, resolution of conflicting testimony, or other such fact-finding judgments, the hearing panel should be afforded a good deal of deference." (*In re Hopper* (1981), 85 Ill. 2d 318, 323.) There was ample evidence to justify the finding that respondent's conduct amounted to fraud and deceit, and respondent has failed by a wide mark to convince us that this finding was against the manifest weight of the evidence.

Finally, the respondent asks that we reject the recommendation that he be disbarred. "Where there is intentional fraud, disbarment is warranted" (*In re Saladino* (1978), 71 Ill. 2d 263), unless there is evidence of extenuating circumstances. The respondent has failed to advance mitigating considerations sufficient to justify a lesser sanction. The respondent contended that he merely wanted to help Mr. Booker and testified before the Hearing Board that "I could see or could envision him [Mr. Booker] passing away *** [and] her being there with property in her name and it going to creditors." This statement gives us no reason to impose a sanction other than disbarment. On the contrary, it serves as additional evidence of respondent's intent to defraud the Department of its interest in Mrs. Booker's estate. The respondent's plea that he was an inexperienced attorney who innocently made wrong decisions is inconsistent with his suggestion that he is entitled to a lesser sanc-

tion because of his 20 years of service to the Illinois State Bar Association.

The respondent stresses this court's concern that sanctions be imposed in a consistent manner. (See *In re Lenz* (1985), 108 Ill. 2d 445.) The respondent's reliance, however, on *In re Betts* (1985), 109 Ill. 2d 154, where the penalty was suspension rather than disbarment is misplaced because we concluded that the conduct in that case "fell short of perpetrating a fraud on the court" (109 Ill. 2d 154, 176). We accept the recommendation that disbarment is appropriate.

*Respondent disbarred.*