(No. 78479.—

*In re* DOUGLAS WAYNE SMITH, Attorney, Respondent.

*Opinion filed November 22, 1995.*

Rosalyn B. Kaplan, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Douglas Wayne Smith, of Chicago, respondent *pro se.*

JUSTICE McMORROW delivered the opinion of the court:

In this attorney disciplinary case, we review findings that respondent, Douglas Wayne Smith, engaged in a pattern of neglecting client matters, failing to expedite litigation, and failing to communicate with clients who retained respondent to represent them in dissolution of marriage proceedings. It was also determined that respondent's misconduct prejudiced the administration of justice and that he failed to promptly refund monies to a client who had discharged him.

Background

Respondent has been licensed to practice law in this State since 1980. His practice is concentrated in domestic relations, and approximately 50 to 100 of his case files were open and pending in 1991, the period of time

when the majority of the misconduct was alleged to have occurred.

Respondent testified before the Hearing Board regarding his standard business practices. He stated that he communicated with his clients primarily by telephone. It was not respondent's practice to preserve phone messages from clients and he rarely noted the substance of his client phone conversations for his files. Respondent had no organized method of documenting the amount of time that he devoted to his clients' cases. He described his method of recording time spent on a client's file as "haphazard." Respondent testified that if he spent a few hours preparing a document related to a client's case or going to court for a client, then he would bill the client for that time. However, respondent would not keep track of the time that he devoted to a case if the marriage dissolution lawsuit was uncontested. Respondent estimated that he only billed his clients for approximately 10% of all client phone calls.

Respondent had no central system to monitor the progress of his cases. During 1991, respondent kept a pocket diary to track court dates of his pending cases. Dates of service were maintained on a separate legal pad, but not in respondent's pocket diary. Prove-up dates were also maintained on a separate legal pad. Respondent stated that after a prove-up hearing, he often waited for the court reporter to call him with a ready transcript as a reminder for him to present the final judgment to the court for approval and entry. Respondent testified that every two or three weeks, he would go through all of his files to check the status of each of his cases. The files of the seven cases at issue in this matter were not marked with the filing date or with the date of service. The chairman of the Hearing Board characterized respondent's case management system as the "court-reporter-diary-jiggle-my-memory-system."

The specific allegations of misconduct filed by the Administrator of the Attorney Registration and Disciplinary Commission (ARDC) pertained to respondent's representation of seven clients in dissolution of marriage cases. Six of the seven clients signed a standard contract when they retained respondent. In respondent's standard contract, the client agreed to pay $765 in fees ($500 minimum fee retainer) and costs ($265) in exchange for respondent's representation. The client agreed to pay respondent $100 for each hour that he devoted to the client's case. If the client paid by personal check, the case would not be filed for at least 10 business days. The seventh client, Rene Espineli, signed a form contract which retained respondent to represent Espineli in an uncontested dissolution of marriage action; attorney fees were set at $80 plus costs. In each case, respondent specified that the dissolution of marriage petition would not be filed until all of his fees were paid in full by the client.

Six of the seven clients who retained respondent to represent them testified before the Hearing Board regarding respondent's mishandling of their cases. The spouse of the seventh client who retained respondent also testified in behalf of the Administrator. All gave evidence tending to show that respondent agreed to represent the clients, who paid in full the attorney fees respondent required before he would begin to handle their cases. Once the fees were paid, however, respondent would fail to expeditiously handle the legal matters and would fail to keep his clients informed of the status of their cases. The witnesses' testimony is set forth in greater detail below with respect to respondent's challenges to the sufficiency of this evidence.

Following its hearing, the Hearing Board determined that respondent had engaged in professional misconduct. The Hearing Board's findings of misconduct included six

counts of failing to communicate with clients in violation of Professional Conduct Rule 1.4(a) (134 Ill. 2d R. 1.4(a)); five counts of failing to expedite litigation consistent with the interests of his clients in violation of Professional Conduct Rule 3.2 (134 Ill. 2d R. 3.2); five counts of neglecting client matters in violation of Professional Conduct Rule 1.3 (134 Ill. 2d R. 1.3); two counts of conduct prejudicial to the administration of justice in violation of Professional Conduct Rule 8.4(a)(5) (134 Ill. 2d R. 8.4(a)(5); see also 107 Ill. 2d R. 1—102(a)(5)); and one count of failing to promptly refund an unearned fee following the termination of the attorney-client relationship in violation of Professional Conduct Rule 1.16(e) (134 Ill. 2d R. 1.16(e)).

As a disciplinary sanction, the Hearing Board recommended a 17-month suspension from the practice of law, with a stay of 12 months of the suspension subject to the successful completion of several probationary conditions. The Review Board adopted the Hearing Board's findings of misconduct, with one exception, and agreed with the disciplinary sanction recommended by the Hearing Board.

Respondent filed a petition for leave to file exceptions to the report and recommendation of the Review Board with this court (134 Ill. 2d R. 753(e)) and asks this court to dismiss the Administrator's complaint or, in the alternative, grant him a new hearing. The Administrator filed a cross-exception requesting that this court reinstate the Hearing Board's finding that respondent had failed to promptly refund an unearned fee.

I

Respondent argues that the Hearing Board's finding that he failed to communicate with six of his clients in violation of Professional Conduct Rule 1.4(a) (134 Ill. 2d R. 1.4(a)) was based upon an erroneous interpretation of ARDC Rule 233 (Dis. Com. R. 233 (eff. April 19, 1985)).

The Hearing Board's determination involved respondent's answers to the Administrator's allegations that respondent failed to return clients' phone calls. In his answers, respondent stated that he "neither admitted nor denied" the allegations but instead demanded strict proof thereof. Applying ARDC Rule 233, the Hearing Board treated these factual allegations as if respondent had admitted them. The admissions then became part of the factual basis for the Hearing Board's conclusion that respondent violated Professional Conduct Rule 1.4(a) (134 Ill. 2d R. 1.4(a)) with respect to the six clients.

Proceedings before the Hearing Board are conducted in accord with the Code of Civil Procedure, our supreme court rules, and by the ARDC rules. (134 Ill. 2d R. 753(c)(5).) ARDC Rule 233 states:

"Rule 233. Answer to be Specific

The answer shall specifically admit or deny each allegation of the complaint. Every allegation not specifically denied is deemed admitted unless the answer states the reason the respondent is unable to make a specific denial." (Dis. Com. R. 233 (eff. April 19, 1985).)

ARDC Rule 236 states:

"Rule 236. Failure to Answer

When the respondent fails to answer or otherwise plead to the complaint, as required by Rules 231 through 233, upon motion of the Administrator and notice to the respondent, all factual allegations and disciplinary charges shall be deemed admitted, and no further proof shall be required. A respondent who has failed to answer timely or otherwise plead may seek leave of the hearing panel to vacate an order of default and file an answer upon a showing that his failure to answer or otherwise plead was a result of mistake, inadvertence, surprise or excusable neglect." Dis. Com. R. 236 (eff. October 21, 1988).

Respondent contends that the Hearing Board may only admit a factual allegation under ARDC Rule 233 in conjunction with the motion and notice requirements set forth in ARDC Rule 236. We conclude that the Hearing Board properly applied Disciplinary Rule 233.

Rule 233 is the Disciplinary Commission equivalent of section 2—610(b) of the Code of Civil Procedure, which provides that "[e]very allegation *** not explicitly denied is admitted." (735 ILCS 5/2—610(b) (West 1992).) Section 2—610(b) also states that a party who alleges a lack of knowledge with respect to an allegation must attach an affidavit of truthfulness. (735 ILCS 5/2—610(b) (West 1992).) Unlike its Code of Civil Procedure counterpart, Rule 233 does not require a respondent to attach an affidavit of truthfulness in support of a response that asserts a lack of knowledge to a specific factual allegation. Rule 233 only requires that a respondent state the reason why he is "unable to make a specific denial." Respondent did not state any reason that would explain why he was unable to specifically deny the allegations that he did not return client telephone calls. Because respondent failed to either specifically admit or deny these factual allegations, and respondent failed to state a reason why he was unable to specifically admit or deny the allegations, the Hearing Board properly deemed admitted, under Rule 233, the allegations that respondent had failed to return client telephone calls.

Respondent claims that ARDC Rules 233 and 236 are vague if both rules are not read in conjunction with each other. Respondent's argument ignores the plain language of the rules. Although Rule 236 refers to Rule 233, the independent purposes of Rule 233 and Rule 236 are apparent. Rule 233 establishes the criteria for a sufficient response in an answer to an individual allegation contained in an Administrator's complaint. In contrast, Rule 236 addresses the circumstances where a respondent fails to file any answer at all to the Administrator's complaint. The motion and notice provisions of Rule 236 are designed to protect those respondents who fail to answer due to "mistake, inadvertence, surprise or excusable neglect," not those respondents who answer a com-

plaint but whose responses to specific allegations are insufficient. Given these distinctions, Rules 233 and 236 are not vague in the manner suggested by the respondent.

## II

Even assuming *arguendo* that the Hearing Board should not have deemed admitted the Administrator's allegations that respondent failed to communicate with his clients, we find from the record that there was ample evidence to demonstrate that respondent did, in fact, fail to maintain proper communication with his clients.

Respondent's representation of Bessie Hartzfield was illustrative of his mishandling of clients' legal matters. Briefly restated here for the purpose of analysis, Bessie Hartzfield testified that she retained respondent to represent her in a dissolution of marriage action against her husband in July 1990. She paid all fees owed to him by April 1991. However, respondent did not file a petition for dissolution of marriage until 10 weeks later, in June 1991. (Hartzfield v. Hartzfield (Cir. Ct. Cook Co.), No. 91—D—09692.) Respondent also filed a summons for Hartzfield's husband with the sheriff's office. Although the summons was returned four days later because Hartzfield had given respondent the wrong address for her husband, respondent did not so notify Hartzfield for three months, until September 1991. Hartzfield testified that she telephoned respondent on numerous occasions throughout the spring and summer, but he never returned her call until sometime in September 1991. At some point during 1992, Hartzfield gave respondent another address for her husband. However, service at the new address was also unsuccessful. Seven months after this second, unsuccessful attempt at service, respondent sent Hartzfield a letter requesting additional funds for service by publication. Respondent also enclosed an affidavit for publication by

service, which he asked Hartzfield to sign, notarize, and return to him. Hartzfield did not send respondent additional funds, nor did she sign and return the affidavit. As of the date of the hearing, Hartzfield's husband still had not been served.

Respondent later withdrew from his representation of Hartzfield. He sent her a letter that included an accounting and a small partial refund of his fee. Respondent defended himself against the misconduct charges by claiming that Hartzfield had been uncooperative. The Hearing Board found that the evidence established that respondent had violated Rule 1.3 (134 Ill. 2d R. 1.3 (neglect of client legal matter)), Rule 1.4(a) (134 Ill. 2d R. 1.4(a) (failure to communicate)), and Rule 3.2 (134 Ill. 2d R. 3.2 (failure to expedite litigation)) of the Illinois Rules of Professional Conduct during his handling of the Hartzfield dissolution of marriage case.

Other clients who testified before the Hearing Board provided similar accounts of respondent's handling of their dissolution of marriage cases. For example, Walter Figueroa testified that he retained respondent in May 1991 and paid all of respondent's fees by mid-August 1991. Figueroa signed the dissolution of marriage pleadings at that time. A week later, respondent filed the Figueroa dissolution of marriage case and filed a summons for his wife with the clerk of the circuit court. (Figueroa v. Figueroa (Cir. Ct. Cook Co.), No. 91—D—13329.) In October 1991, Figueroa's wife filed a *pro se* appearance in the case and later filed an answer to the dissolution of marriage petition. In November 1991, Figueroa began to make daily telephone calls to respondent's office to find out the status of his case, but respondent never returned his calls. In December 1991, respondent sent interrogatories and a request to produce documents to Figueroa's wife. However, respondent did no other work on the case for the next 11 months. In

December 1992, respondent met with Figueroa to discuss the status of the case. Respondent also filed a motion to compel a response by Figueroa's wife to the discovery request. (134 Ill. 2d R. 201(k).) After the wife failed to respond to this motion, the circuit court found her in default. Following a prove-up hearing, Figueroa's dissolution of marriage was completed in April 1993, nearly three years after he had first retained respondent. In May 1993, respondent sent Figueroa a refund check for "unapplied costs."

In his own defense, respondent testified any delay in the case was merely a successful tactical move because he "didn't want to push [Figueroa's former wife] against the wall." As further explanation for the delay, respondent stated that he expected the trial judge to give Figueroa's former wife additional time because of her status as a *pro se* litigant. The Hearing Board found that the evidence established that respondent had violated Rule 1.3 (134 Ill. 2d R. 1.3 (neglect of client matters)), Rule 1.4(a) (134 Ill. 2d R. 1.4(a) (failure to communicate)), and Rule 3.2 (134 Ill. 2d R. 3.2 (failure to expedite litigation)) of the Illinois Rules of Professional Conduct by his actions during the Figueroa dissolution of marriage case.

The testimony of the remaining clients (Mary Sayers, Connie Lamb, Alicia Gutierrez, and Roger Morgan) recounted similar mishandling by respondent. In each case, the client retained the respondent and paid the fees he required. Nevertheless, the respondent failed to pursue their dissolution of marriage actions to timely completion. In addition, the respondent did not keep the clients informed and apprised of the status of their cases.

The Administrator's evidence was more than sufficient to prove that respondent failed to properly communicate with his clients. Under Professional Conduct

Rule 1.4(a) (134 Ill. 2d R. 1.4(a)), a lawyer has a two-part duty to communicate with his clients in order to keep them both "reasonably informed about the status" of their cases and to "promptly comply" with their requests for information. (134 Ill. 2d R. 1.4(a).) The first part of Rule 1.4(a) imposes an affirmative duty on lawyers to take the necessary steps to keep clients informed about their cases so the client can make intelligent choices as to the direction of the litigation. This duty to inform falls upon the lawyer, not the client. In addition, the second part of Rule 1.4(a) imposes a duty upon counsel to respond to client questions and demands for information by responding "promptly" to these questions and demands. While the lawyer's duty to communicate applies to all clients, from the most ignorant to the most sophisticated, compliance is particularly important for those clients who may be unfamiliar with the workings of our legal system.

The Hearing Board found that the clients called by the Administrator as witnesses gave "highly credible" testimony as to their repeated attempts to reach respondent and to respondent's failure to return their phone calls. The findings of the Hearing Board with respect to the credibility of witnesses are entitled to great deference. (*In re Blank* (1991), 145 Ill. 2d 534, 547.) Despite repeated attempts by these six clients to contact him, respondent failed to inform them of the status of their cases and neglected to return their telephone calls. In light of these circumstances, we believe that clear and convincing evidence proved that respondent failed to communicate with his clients.

### III

In addition, we determine that the Administrator proved by clear and convincing evidence that respondent neglected and failed to expedite litigation in the cases of five of his clients in violation of Rule 1.3 (134

Ill. 2d R. 1.3) and Rule 3.2 (134 Ill. 2d R. 3.2) of the Illinois Rules of Professional Conduct. This court has recognized that the Hearing Board is in a superior position to resolve factual questions because the Hearing Board is able to observe the demeanor of witnesses and judge their credibility. (*In re Timpone* (1993), 157 Ill. 2d 178, 196; *In re Hopper* (1981), 85 Ill. 2d 318, 323.) As a result, the factual determinations of the Hearing Board are entitled to great deference and generally will not be disturbed unless they are against the manifest weight of the evidence. See *In re Ushijima* (1987), 119 Ill. 2d 51, 56-57.

Rule 1.3 and Rule 3.2 of the Illinois Rules of Professional Conduct address the same underlying misconduct: unreasonable attorney delay in client matters. Rule 1.3 directs lawyers to "act with reasonable diligence and promptness in representing" their clients. (134 Ill. 2d R. 1.3.) The commentary to the American Bar Association Model Rule 1.3 of Professional Conduct, which is substantially similar to our Professional Conduct Rule 1.3, recognizes that "[e]ven when the client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness." (ABA Lawyer's Manual on Professional Conduct, Rule 1.3, Comment, at 01:109 (1995) (hereinafter ABA Manual on Professional Conduct).) The commentary also observes, "Perhaps no professional shortcoming is more widely resented than procrastination." (ABA Manual on Professional Conduct, Rule 1.3, Comment, at 01:109.) The duty of "reasonable diligence and prompt action" set forth in Rule 1.3 is buttressed by Rule 3.2 of the Illinois Rules of Professional Conduct, which directs lawyers to "make reasonable efforts to expedite litigation consistent with the interests of the client" (134 Ill. 2d R. 3.2). It is especially important that attorneys take all reasonable steps

to ensure that client matters are handled expeditiously, inasmuch as "[d]ilatory practices bring the administration of justice into disrepute." ABA Manual on Professional Conduct, Rule 3.2, Comment, at 01:147.

Respondent fails to bring to this court's attention any credible evidence that would justify a departure from the Hearing Board's determinations that respondent violated Rule 1.3 and Rule 3.2 with respect to his mishandling of legal matters for Hartzfield, Figueroa, Sayers, Gutierrez, and Morgan. Respondent claims that he devoted time to these clients' cases and that he took steps to move the cases toward conclusions favorable to his clients. Respondent contends that his efforts were thwarted by uncooperative clients, incompetent court reporters, or lost files within the court system. Respondent also argues that he was simply careless in recording his time.

We have closely reviewed the evidence but find that respondent's arguments are unsupported by the record. The testimony of the clients amply portrayed respondent's pattern of neglect of their cases and his failure to properly expedite the legal matters for which he had been retained. The Hearing Board chose not to believe respondent's unsubstantiated and self-serving version and there is no basis in the record for this court to set aside this finding. Notes from respondent's case files show long periods of inactivity, ranging from 8 to 14 months, in each of these cases. It is the province of the Hearing Board to judge the credibility of witnesses and resolve conflicting evidence, and we see no reason to disturb the Hearing Board's conclusion that respondent neglected and failed to expedite litigation in the Hartzfield, Figueroa, Sayers, Gutierrez, and Morgan cases in violation of Rule 1.3 and Rule 3.2 of the Illinois Rules of Professional Conduct.

In an apparent attempt at mitigation, respondent

implies that Figueroa, Sayers, Gutierrez, and Morgan suffered no prejudice due to the lengthy delays in their cases because judgments for dissolution of marriage were eventually entered in each of their cases. We reject this argument. Months of unexplained delay in the completion of relatively simple dissolution of marriage actions cannot be excused merely because clients ultimately received the legal services for which they had retained the respondent. The long delays caused by the respondent's failure to expedite and keep abreast of his clients' dissolution of marriage actions caused those clients considerable and needless anxiety. Respondent's claim that his clients did not suffer from his misconduct ignores the anguish that his inaction necessarily inflicted upon his clients.

## IV

Respondent challenges the Board's determination that his actions in the Espineli case prejudiced the administration of justice in violation of both Professional Conduct Rule 8.4(a)(5) (134 Ill. 2d R. 8.4(a)(5)) and Code of Professional Responsibility Rule 1—102 (a)(5) (107 Ill. 2d R. 1—102(a)(5)). (Both the Code of Professional Responsibility and the Rules of Professional Conduct were implicated in the Espineli case because respondent's misconduct began while the Code of Professional Responsibility was still in effect until August 1, 1990, and continued after the Rules of Professional Conduct became effective on August 1, 1990.)

The record reflects that Rene Espineli retained respondent to represent him in his uncontested dissolution of marriage action against his wife in June 1988. Espineli paid the full amount of the fees and court costs at his first meeting with respondent. The matter proceeded uneventfully until September 1988, when respondent failed to file the transcript of the prove-up hearing within 28 days as required by local court rules.

(Cook Co. Cir. Ct. R. 13.7.) Moreover, the trial court judge refused to enter judgment because respondent had not numbered the pages in the property settlement agreement and because neither party had initialed each page of the property settlement agreement. The trial court dismissed the Espineli case for want of prosecution in September 1989. Yet, it was not until late October 1989 that respondent sent Espineli a revised copy of the property settlement agreement and informed him that both he and his spouse needed to initial each page of the property settlement agreement. Espineli returned the initialed agreement to respondent in early December 1989.

Thereafter, Espineli's wife, Anne, obtained a vacatur of the dismissal for want of prosecution. Acting *pro se*, Anne also filed for dissolution of marriage. In February 1992, almost $3^1/2$ years after her husband had retained respondent to complete an uncontested dissolution of marriage, the trial judge granted Anne a judgment for dissolution of the marriage.

Anne Espineli testified before the Hearing Board to demonstrate that respondent's representation violated professional standards. Respondent argued that Anne's testimony was inadmissible on relevancy grounds because she was not his client and therefore he did not owe any professional duty to her. The Hearing Board disagreed, reminding respondent:

"You had an obligation if you took the retainer to get the husband divorced. If it now appears that the contract of employment wasn't carried out by you and that in fact the opposing party subsequently had to come along and file an action, *** that's relevant."

Respondent claims that the Administrator's failure to have Rene Espineli testify before the hearing prevents a finding by the Hearing Board that he had prejudiced the administration of justice in the Espineli case. We disagree.

The duty imposed on lawyers by Professional Conduct Rule 8.4(a)(5) (and its pre-1990 equivalent Code of Professional Responsibility Rule 1—102(a)(5)) encompasses the entire court system by requiring lawyers to refrain from "conduct that is prejudicial to the administration of justice." (134 Ill. 2d R. 8.4(a)(5); 107 Ill. 2d R. 1—102(a)(5).) The Rules of Professional Conduct recognize that the practice of law is a public trust and lawyers are the trustees of the judicial system. (134 Ill. 2d Illinois Rules of Professional Conduct, Preamble, at 470-72.) In addition, this court has held that lawyers owe a duty to assist the court in administering justice and in arriving at correct conclusions. (*In re Braner* (1987), 115 Ill. 2d 384, 392; see also *People ex rel. Healy v. Case* (1909), 241 Ill. 279, 283-84.) One aspect of the duty to assist the administration of justice requires lawyers engaged in litigation to aid the court in "the expeditious consideration and disposal of cases." *People v. Buckley* (1987), 164 Ill. App. 3d 407, 413.

The evidence amply demonstrates that respondent violated his duty to assist the court in the expeditious consideration and disposal of an uncontested dissolution of marriage case. Because respondent violated local court rules and did not promptly repair the clerical defects in his client's property settlement agreement, the Espineli case was dismissed for want of prosecution. As a result of this misconduct by respondent, the circuit court was forced to address the *pro se* claims of Anne Espineli three years after the prove-up hearing.

Both the law and the evidence support the Hearing Board's conclusion that respondent's inaction prejudiced the administration of justice in the Espineli case. An attorney's duty to refrain from actions which prejudice the administration of justice is not limited solely to acts taken on behalf of clients but also extends to the court. This being so, it was not necessary for respondent's cli-

ent to testify in order to establish prejudice to the administration of justice in the Espineli case. Anne's testimony, together with the documentary evidence, established by clear and convincing evidence that respondent prejudiced the administration of justice in the Espineli case.

## V

Respondent argues that the factual allegations contained in the Administrator's complaint failed to give him adequate notice that the Administrator intended to offer the testimony of Cook County circuit court Judge Kathy Flanagan in regard to respondent's handling of the Morgan case.

Respondent was retained by Roger Morgan in November 1990 to represent him in dissolution of marriage proceedings. Morgan paid the fees and costs required in respondent's standard contract and respondent filed the petition seeking dissolution of the marriage. The circuit court granted the petition at a prove-up hearing held in March 1991. However, respondent never filed the necessary transcript as required by local court rule. Believing his marriage had been dissolved, Morgan remarried in May 1991. Morgan eventually learned from the clerk of the circuit court that dissolution of his marriage had never been finalized and that no judgment with respect thereto had been entered. Pursuant to actions undertaken by Morgan's mother, who notified Cook County circuit court Judge Kathy Flanagan that judgment had never been entered, Judge Flanagan ordered respondent to appear before her with a copy of the necessary transcript. Thereafter, Judge Flanagan entered an order in May 1992 that dissolved the marriage *nunc pro tunc* to the date of the prove-up hearing. Respondent testified before the Hearing Board that he could not explain "the reason of total delay in this case."

In the pleadings initially filed by the Administrator, no reference was made to Judge Flanagan's involvement in the eventual entry of judgment dissolving Morgan's marriage. Nevertheless, the Board permitted Judge Flanagan to testify at the hearing. Briefly restated, Judge Flanagan recounted the efforts undertaken by Morgan's mother to discover the status of her son's case; Judge Flanagan's efforts to inform respondent of the delay, her subsequent attempts to determine the reasons for the delay, and her efforts to prompt respondent to rectify the matter; and Judge Flanagan's entry of a final *nunc pro tunc* judgment order in May 1992. The circuit court judge further testified that respondent also appeared before another judge who entered final judgment dissolving the marriage, and that Judge Flanagan vacated this judgment in order to preserve the validity of the *nunc pro tunc* judgment that she had already entered.

Respondent claims that the Hearing Board should not have permitted Judge Flanagan to testify to matters that were not alleged in the original pleading filed against him by the Administrator and that its inclusion violated his rights to procedural due process. It is a violation of procedural due process to discipline an attorney without giving the attorney fair notice of the precise nature of the misconduct charges being brought against him. (*In re Ruffalo* (1968), 390 U.S. 544, 550-51, 20 L. Ed. 2d 117, 122, 88 S. Ct. 1222, 1226; *In re Doyle* (1991), 144 Ill. 2d 451, 470-71.) When the Administrator brings a charge of misconduct against an attorney, the Administrator's complaint must provide notice to the charged attorney sufficient to "reasonably inform the attorney of the acts of misconduct he is alleged to have committed." (134 Ill. 2d R. 753(b).) This court has further explained the notice requirement in a disciplinary complaint:

"A complaint that does not allege facts, the proof of which are necessary to entitle a plaintiff to judgment, fails to state a cause of action. The complaint must contain factual allegations of every fact which must be proved in order for the plaintiff to be entitled to judgment on the complaint, and a judgment cannot be rendered on facts demonstrated by evidence at trial unless those facts shown were alleged in the complaint." *In re Beatty* (1987), 118 Ill. 2d 489, 499.

The Review Board determined that Judge Flanagan's testimony was "not critical" to the finding that respondent had violated professional standards in his handling of the Morgan case. We agree that the documentary evidence, and the testimony provided by Morgan, amply supported the Hearing Board's determination that respondent's failure to timely file the transcript of the prove-up hearing, in order to permit the circuit court's entry of final judgment of dissolution of marriage, amounted to conduct that prejudiced the administration of justice. As noted above with respect to the Espineli case, an attorney owes a duty to the court to aid the expeditious administration of justice. This includes the timely filing of the transcripts and documents that will form the necessary predicate to the court's entry of final judgment. Respondent's inaction for over a year, with no cause or justification, needlessly interfered with the court's timely administration of justice in the Morgans' marriage dissolution case. Moreover, respondent's actions amounted to neglect of a client's legal matter and a failure to properly expedite the proceedings in behalf of his client. Respondent's conduct also established that he failed to communicate with his client. Such professional misconduct is apparent from the record without any resort to the testimony of Judge Flanagan. As a result, even assuming *arguendo* that the testimony of Judge Flanagan should not have been admitted at the hearing, the remaining evidence

was sufficient to prove the charges of misconduct that were filed by the Administrator against respondent.

## VI

Respondent attacks the fairness of the Hearing Board proceeding on three grounds. First, he claims that the Administrator gained an unfair advantage when the Hearing Board allowed Judge Flanagan to testify as to the contents of a letter that had not been produced by the Administrator during discovery. Second, respondent contends that the Hearing Board improperly failed to consider or allow the introduction of evidence relating to mitigation. Lastly, respondent argues that a pattern of erroneous decisions and statements by the Hearing Board establishes that the Board was prejudiced against him.

Respondent's argument that the Administrator gained an unfair advantage when the Hearing Board allowed Judge Flanagan to testify to a letter that was not admitted into evidence is a subsidiary argument to respondent's earlier challenge to the scope of Judge Flanagan's testimony in the Morgan case. We have already determined that this charge was amply proved without resort to the substance of Judge Flanagan's testimony. As a result, we see no need to discuss this issue further.

We also reject respondent's claim that the Hearing Board improperly failed to consider or allow the introduction of evidence supporting mitigation. The record reveals that, in its recommendation of sanction, the Hearing Board took into account respondent's belated efforts to bring the Figueroa, Sayers, Gutierrez, and Morgan cases to final judgment and his efforts to refund unexpended costs and fees to clients.

Finally, respondent's argument that the alleged pattern of erroneous decisions and statements by the Hearing Board is evidence of the Hearing Board's prejudice

against respondent is without merit. Respondent is entitled to an impartial Hearing Board (see, *e.g., In re Betts* (1985), 109 Ill. 2d 154, 168). However, after rejecting the arguments previously discussed in this opinion, respondent is reduced to asserting that the Board's prejudice is shown by one quote contained in the Hearing Board's report and one statement by the Board chairman during the hearing. We have reviewed these matters, and find they provide no support for respondent's claims.

The Hearing Board referenced upon the following quote to describe the long and contentious pretrial record in this case: "The tangled skein of docket entries and pre-trial proceedings almost defies description." (*Burton v. Hitachi America, Ltd.* (7th Cir. 1974), 504 F.2d 721, 722.) In view of the contentious and extensive pretrial record, which includes 500 pages of pleadings and one discovery dispute that was resolved by this court (Smith v. Robinson (1993), No. 75284), we believe that this quote is an accurate description of the case at bar and cannot be viewed as showing prejudice to respondent.

In addition, respondent asserts that a verbal exchange between the chairman of the Hearing Board and respondent during which the chairman allegedly "berated" respondent was evidence of the Hearing Board's prejudice. The verbal exchange in question took place following respondent's cross-examination of Hartzfield during which respondent attempted to establish that any delay in the case was due to the uncooperative behavior of Hartzfield. Exasperated with this line of argument, the chairman addressed the following question to respondent: "Why didn't you just withdraw then, if I could ask you that? It may seem like a stupid question." We recognize that neither the supreme court rules nor the Rules of Professional Conduct required respon-

·dent to withdraw from the Hartzfield case although respondent certainly had the option to do so (see 134 Ill. 2d R. 1.16). Nevertheless, we do not believe that this single statement by the chairman indicates prejudice on the part of the Board toward respondent.

## VII

The Administrator challenges the Review Board's reversal of the Hearing Board's finding that respondent failed to promptly refund the unearned portion of Connie Lamb's fee in violation of Professional Conduct Rule 1.16(e) (134 Ill. 2d R. 1.16(e)).

In Illinois, a client may discharge an attorney at any time for any reason. This rule provides a measure of protection to clients from the severe consequences of the loss or erosion of the trust which lies at the heart of the attorney-client relationship. (*Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 227-28.) Following discharge, a lawyer is not entitled to the full amount of fees agreed to between the lawyer and the client in contract. Instead, the lawyer is only entitled to be compensated on a *quantum meruit* basis for the legal services which the lawyer actually performed on the client's behalf. (*Rhoades*, 78 Ill. 2d at 230.) Professional Conduct Rule 1.16 imposes a duty on a lawyer to withdraw from representing a client after the client has discharged the attorney. (134 Ill. 2d R. 1.16(a).) After a lawyer's withdrawal from a case, Rule 1.16(e) requires counsel to promptly refund to the client any unearned portion of a fee paid in advance to the lawyer by the client. 134 Ill. 2d R. 1.16(e).

The record shows that respondent represented Lamb in her dissolution of marriage proceeding for approximately 12 weeks. When respondent was initially retained, Lamb signed a standard retainer agreement that required prepayment of $500 in legal fees and $265 in costs, and set respondent's hourly fee at $100. Ac-

cording to respondent's records, during the time that he represented Lamb, respondent devoted a total of 126 minutes to Lamb's case. Lamb became dissatisfied with respondent's failure to promptly pursue the legal matter and discharged respondent before a judgment for dissolution of the marriage was entered. Respondent never provided Lamb with an accounting or a fee refund following his discharge, although respondent did send Lamb a check for $76.12 in "unapplied costs" approximately 21 months after his discharge. In his defense, respondent testified that he had probably completed five hours of legal work on the Lamb case before his discharge and that he was therefore entitled to the full fee under the contract.

The appellate court addressed circumstances similar to the Lamb case in *Simon v. Auler* (1987), 155 Ill. App. 3d 1000. In *Auler*, a lawyer charged a client a $5,000 retainer for representing her in a dissolution of marriage action. However, the *Auler* client reconciled with her spouse and brought suit against the lawyer for a refund of the retainer fee. In finding that the lawyer was only entitled to compensation on a *quantum meruit* basis for those legal services which he performed, the appellate court stated:

> "A client who has executed a retainer contract and paid a substantial retainer fee to an attorney must be able to recover a portion of the retainer fee upon discharging the attorney after he had performed only a small amount of work. A contrary holding would seriously infringe upon the client's right to discharge the attorney at will and unjustly penalize the client for exercising that right." *Simon,* 155 Ill. App. 3d at 1003.

We believe that this rationale is applicable to the Lamb case. Respondent was discharged before a marriage dissolution judgment was entered. His own records refute the claim that he did "probably close to" five hours of legal work on the Lamb case. According to

respondent's records, he provided approximately two hours of legal services for Lamb. The standard contract signed by Lamb required that the client prepay respondent $500 in legal fees to begin his representation of her in the dissolution of marriage action. There is nothing in the record to suggest that this prepaid legal fee amounted to a nonrefundable retainer. On the contrary, it appears that the retainer represented five hours of legal work at $100 per hour that respondent would perform on behalf of the client before the client would be billed for additional legal services. Given these circumstances, respondent is entitled to be compensated only for those legal services which he performed. It appears that respondent did not devote more than two billable hours to the Lamb case. We therefore find that the Rule 1.16(e) charges are supported by both the law and the evidence and order respondent to refund the unearned $300 of the retainer fee to Lamb.

## VIII

Having determined that the evidence supported the Hearing Board's findings of professional misconduct, we turn to the proper sanction to be imposed. The purpose of disciplinary proceedings is to "protect the public, to maintain the integrity of the profession and to protect the administration of justice from reproach. [Citations.]" (*In re Fox* (1988), 122 Ill. 2d 402, 410.) Punishment is not the object of a disciplinary inquiry. Rather, the goal is to " 'determine whether the attorney is a proper person to be permitted to practice his profession.' " *In re March* (1978), 71 Ill. 2d 382, 395, quoting *In re Andros* (1976), 64 Ill. 2d 419, 423.

In aggravation, the Hearing Board found that the evidence presented by the Administrator established that respondent "engaged in a pattern of neglecting client matters and failing to communicate with his clients about their cases." This court has found that a "pattern

of neglect weighs heavily in favor of a period of suspension." *In re Samuels* (1989), 126 Ill. 2d 509, 531; see also *In re Levin* (1984), 101 Ill. 2d 535, 541-42 (and cases cited therein).

Cooperation in the disciplinary proceeding is an additional factor that this court weighs in the determination of a disciplinary sanction. (*In re Samuels*, 126 Ill. 2d at 531.) As this court has noted, attorneys have a duty to cooperate with the Administrator in a disciplinary proceeding:

> "Inasmuch as an attorney is an officer of this court and is licensed by this court to exercise the privilege of practicing law, an attorney has an obligation to cooperate with this court and its agency, the Attorney Registration and Disciplinary Commission, in the performance of its duty to police the legal profession in this State." (*In re Zisook* (1981), 88 Ill. 2d 321, 331.)

In this case, the record reflects that respondent's efforts to cooperate in these proceedings have not been satisfactory. In five response letters to the Administrator, respondent made the unsubstantiated claim that there was something "seriously wrong" in her handling of the case. In his answer to the disciplinary charges, respondent accused the Administrator of the "highly unethical" practice of requiring him to educate the Administrator's employees about the proper workings of the court system. Moreover, the record indicates that "[p]rior to the hearing, respondent repeatedly filed frivolous requests and meritless motions which appear solely calculated to delay the proceedings." *In re Samuels*, 126 Ill. 2d at 531.

While the goal of this court has been consistency in its imposition of discipline (*In re Samuels*, 126 Ill. 2d at 531), we also recognize that each case is unique and must be resolved according to its particular circumstances. (*In re Ushijima*, 119 Ill. 2d at 57.) As to the imposition of discipline, both the Hearing Board and the

Review Board recommended that respondent be suspended for 17 months with a stay of 12 months of the suspension subject to respondent successfully fulfilling probationary conditions which include the following:

(1) respondent must implement effective management and tracking systems for his cases, files, and client contacts;

(2) respondent must use due diligence in returning telephone calls and correspondence from clients;

(3) respondent must attend two meetings with the Administrator and submit two written reports to the Administrator addressing the terms of his probation, the status of his law practice and of all of respondent's open files;

(4) respondent must comply with the Illinois Rules of Professional Conduct; and

(5) respondent must take and pass the Multistate Professional Responsibility examination.

We believe that the recommendations of the Hearing Board and the Review Board provide an appropriate sanction. This court has suspended attorneys from the practice of law for one year in similar cases involving neglect of client matters in the absence of corrupt or dishonest motives. (*In re Samuels*, 126 Ill. 2d at 532; *In re Taylor* (1977), 66 Ill. 2d 567, 573.) In this case, the term of suspension combined with the successful completion of the strict probationary conditions will both safeguard the public and the administration of justice, as well as give respondent the opportunity to reform and improve the case management skills necessary to continue his law practice. The Hearing Board was correct in its assessment of respondent's case management requirements:

"A high volume, low-price practice such as respondent's is not viable unless it is run efficiently and conscientiously. With 50 to 100 active cases a year, respondent needs an effective system to track cases. *** [Respondent's] haphazard office practices guaranteed that respondent would not be able to handle his caseload without neglecting cases."

Respondent raises claims of "bad faith" conduct on the part of the Administrator and asks this court to examine supplemental exhibits in support of his claims of "bad faith" conduct. However, respondent presented these matters for the first time in oral argument before this court and they are therefore not properly preserved for review. As a result, we do not address them.

For the reasons stated, respondent is suspended from the practice of law for 17 months, with 12 months of the suspension to be stayed subject to the successful completion of the conditions of probation stated herein. Further, respondent shall reimburse the Disciplinary Fund for any Client Protection payments arising from his conduct and shall reimburse Connie Lamb $300 prior to the termination of the period of suspension/probation.

*Respondent suspended.*