In re PRODUCTION ASSOCIATES,
LTD., Debtor.

No. 00 B 36442.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

July 11, 2001.

---

Richard M. Kates, Chicago, IL, for Movant or Plaintiff.

Joseph E. Cohen, Gina B. Krol, Cohen & Krol, Chicago, IL, for Respondent or Defendant.

Richard Friedman, Chicago, IL, Office of the U.S. Trustee, Trustee or Other Attorneys.

## MEMORANDUM OPINION AS TO PAYMENT RECEIVED BY DEBTOR'S COUNSEL

JACK B. SCHMETTERER, Bankruptcy Judge.

### INTRODUCTION

On December 13, 2000, the Debtor Production Associates, Ltd. ("Debtor") filed a voluntary Chapter 11 Bankruptcy Petition with assistance of its counsel, Richard M. Kates. It continued as Debtor-in-possession under Chapter 11 until the case was converted to one under Chapter 7 on April 30, 2001. On that date, the Order for such conversion provided *inter alia* in ¶ 5 thereof that:

> All professional persons who performed services in connection with the Chapter 11 case and who seek compensation or reimbursement of expenses or to retain a retainer shall file their application for final compensation on or before May 23, 2001 ("Order").

The format and content required for a fee application for work in cases under Chapter 11 of the Bankruptcy Code is set forth in Local Bankruptcy Rule 607. No such fee application in that or any other form was filed by Mr. Kates. Instead, he filed on May 23, 2001, an "Application for Order Authorizing Employment of Richard M. Kates By Debtor in Possession as Attorney," pursuant to 11 U.S.C. § 327 and Rule 2014 Fed.R.Bankr.P. In that application he indicated that he was to provide ". . . all legal services required by Debtor in possession." (¶ 3). He sought approval of such employment "nunc pro tunc to the petition date of December 13, 2000." Attached to that application was the affidavit of Mr. Kates that in pertinent part provided:

> 3. I have no agreement to share fees. I have an advance payment retainer which could also be considered a classic retainer, as defined in the case of *In re McDonald Bros. Const., Inc.*, 114 B.R. 989 (Bankr.N.D.Ill.1990) of $5,000 paid prior to the filing of this bankruptcy by Production Associates Ltd. for services to be performed in the Chapter 11 including if converted to Chapter 7.

He set forth no facts showing that he did receive a "classic retainer," nor did he give any further details concerning the $5,000 payment.

These filings and noncompliance with the Order of April 30th imply that Mr. Kates believes and contends that he is not obliged and does not intend to comply with the Order merely because of his assertion that he received "an advance payment retainer which could also be considered a classic retainer," and that the *McDonald* opinion excuses him from filing the ordered fee application.

In this he is greatly mistaken. For reasons stated below, an evidence hearing will be separately ordered at which he can offer evidence as to the form of retainer if any he received, most particularly includ-

ing evidence of circumstances under which the payment was received and evidence of any agreement between Mr. Kates and the Debtor. In absence of a written agreement, Mr. Kates should bring in testimony by a representative of the Debtor with whom any agreement was made, as well as his own testimony.

Following such hearing, it will be decided:

A. Whether Mr. Kates received a "classic retainer," "security retainer,"or an "advance payment retainer;"

B. Whether if Mr. Kates received a "classic retainer" or "advance payment retainer" he must nonetheless disgorge it to the Chapter 7 trustee because of his failure either to comply with the order of court or seek vacation thereof by showing that he need not comply therewith; and

C. Whether some sanctions should be imposed for failure to file his disclosure timely as required by Rule 2016(b) Fed.R.Bankr.P.

## BACKGROUND

Debtor which is located in Libertyville, Illinois, filed a voluntary Chapter 11 Bankruptcy Petition on December 13, 2000. Its bankruptcy schedules were due to be filed by December 27, 2000, but were not filed until February 20, 2001. On the latter date, Counsel Kates filed the required disclosure under Rule 2016(b) Fed. R.Bankr.P. Counsel's disclosure showed that he had received a payment of $5,000 for "legal services rendered or to be rendered in contemplation of and in connection with this case." Counsel did not specify when he received the payment from Debtor. However, the last entry in Debtor's Exhibit A, which accompanied its Schedules, shows that Counsel received the payment on December 12, 2000, the day before Debtor filed for bankruptcy. Counsel's disclosure was not filed within 15 days of the filing of Debtor's bankruptcy petition, as required by Rule 2016(b) Fed. R.Bankr.P.

Debtor converted its case to a Chapter 7. On April 30, 2001, the Order of conversion also ordered Debtor to turn over all of its property and records to the Trustee, set a status hearing for May 23, 2001, and ordered all professionals that had performed services for the Debtor to file their final application for compensation including requests to keep any retainer by them on that date. Under § 327 of the Code, Debtor filed its application (signed by Mr. Kates) to employ Kates. On the same day, Counsel appended his affidavit in support of Debtor's application stating in relevant part that he was a disinterested party and that he had received "an advanced payment retainer which could also be considered a classic retainer ..." of $5,000 prior to Debtor filing for bankruptcy. Counsel did not provide a written agreement describing the payment or the terms of his employment.

## DISCUSSION

Judge Wedoff's opinion in *McDonald* set out principles applicable to retainers under Illinois law, principles pertinent to the $5,000 payment by the Illinois Debtor to Mr. Kates.

*The Different Types of Retainer Agreements*

There are generally three broad categories of retainers: "classic" (sometimes called "earned-on-receipt retainers,") "advanced payment retainers," and "security retainers."

*"Classic Retainer"*—Under a classic retainer agreement, the client agrees to pay a fixed sum to have the attorney available to perform legal work that may arise dur-

ing a specified period of time. An essential characteristic of the classic retainer is that it is earned by the lawyer upon receipt, without the lawyer being required to provide any legal services. The retainer is merely consideration for the lawyer agreeing not to represent another during the specified time period. Another important feature of a classic retainer is that the client retains no interest in the payment after the payment is made. *See In re Pannebaker Custom Cabinet,* 198 B.R. 453, 459 (Bankr.M.D.Pa.1996); *In re McDonald Bros. Const., Inc.,* 114 B.R. 989, 998 (Bankr.N.D.Ill.1990); and 1 William L. Norton, Jr., Norton Bankruptcy Law & Practice 2d § 27:17.

*"Security Retainer"*—Under a security retainer agreement, the attorney holds the funds advanced by the client to cover future legal work. The funds are not a present payment. Rather, the funds remain property of the client until the lawyer applies the funds to services rendered. Any unearned funds are returned to the client upon termination of the representation. *See Pannebaker,* 198 B.R. at 459; *In re McDonald,* 114 B.R. at 999; and Norton, *supra,* § 27:17,

*"Advance Payment Retainer"*—Under advance fee agreements, the attorney receives payment in advance for legal work to be performed in the future. The retainer may represent a full payment covering all services to be performed for the client, or the payment may be a partial payment which will be augmented by the client once services equal to the payment amount have been rendered. The difference between an advance retainer and a security retainer is that the advance retainer is intended as a present payment to the lawyer for his agreement to represent the client. However, the payment is refundable if the representation ends before services equal to the payment amount are performed. *In re*

*Smith,* 168 Ill.2d 269, 213 Ill.Dec. 550, 659 N.E.2d 896, 907 (1995) (lawyer disciplined for failing to promptly return unearned portion of prepaid legal fee); *McDonald,* 114 B.R. at 1000; Norton, *supra,* § 27:17.

■ Laws in some states prohibit advanced fee retainers. Those laws require any funds received from a client for services not yet performed to be placed in a client trust account until earned by performance. In those states, all fee retainers are thereby made into security retainers which cannot be drawn against until legal services are rendered. *McDonald,* 114 B.R. at 1002. However, Illinois law does not bar advanced retainer agreements. *Smith,* 213 Ill.Dec. 550, 659 N.E.2d at 896 (lawyer was not disciplined for accepting advanced retainer or for commingling funds but for not promptly returning the unearned portion of retainer); *McDonald,* 114 B.R. at 1001.

*Provisions of the Code relating to the employment of Professionals*

■ The filing of a bankruptcy case in Chapter 11 results in the creation of an estate, which is comprised of all of the legal and equitable interest the debtor has in any property. 11 U.S.C. § 541(a)(1). The funds in a bankruptcy estate are trust funds and the court has an independent duty to assure that the funds are administered in a way that is consistent with the intent of the Bankruptcy Code. *McDonald,* 114 B.R. at 994 (citing *In re Ross,* 88 B.R. 471, 475 (Bank.M.D.Ga.1988)). Thus, any professional seeking compensation from the estate must first obtain approval from the court. *Id.* Failure to obtain approval before drawing against estate property would be a violation of the automatic stay. 11 U.S.C. § 362(a)(3); *Id.* Several provisions of the Code define the court's role in overseeing the hiring and payment of professionals by the debtor/trustee.

186

*Employment of Professionals*

■■■■ Section 327(a) of the Bankruptcy Code allows the debtor or trustee to employ professionals after obtaining approval of the court. The debtor or trustee must file an application with the court and notice the United States Trustee for a hearing thereon. The application to hire professionals, such as attorneys or accountants, does not have to be noticed to creditors. 11 U.S.C. § 327(a); Fed.R.Bankr.P. 2014(a); *In re Zukoski*, 237 B.R. 194, 196 (Bankr.M.D.Fla.1998). Here Mr. Kates failed to seek approval of his employment at the beginning of the Chapter 11 case and now seeks to have that employment ratified retroactively without explanation as to why he did not seek such approval last December.

■■■■ Code Section 328 relates to the terms upon which a debtor or trustee may hire professionals. Professionals may be employed with court approval upon any reasonable terms or conditions, including payments via retainer. The court may subsequently change the compensation allowed if at the conclusion of the case, the court believes the earlier authorization was "improvident" in light of events that could not have been anticipated at the beginning of the case. 11 U.S.C. § 328(a).

■■■■ Any attorney that represents the debtor must file a statement showing any payment received or agreed to be paid in the year prior to filing the bankruptcy petition, whether or not the attorney intends to file for compensation from the estate. 11 U.S.C. § 329(a). Further, the court can order the attorney to disgorge any payment that is excessive. 11 U.S.C. § 329(b). Every attorney for a debtor must make the required disclosure under § 329 within 15 days of the filing of the petition. Fed.R.Bankr.P.2016(b). Failure to timely file the disclosure could result in the loss of the attorney's fee or other such

sanctions the court may decide to impose, whether or not the estate is harmed by the delay. *In re Woodfield Gardens Associates*, No. 97 B 26706, 1998 WL 276453, at *4 (court reduced law firm's fee by 2.5% for failure to comply with a local rule and Rule 2016(b), and refused to allow interim fee for attorney that failed to make the disclosure). *Id.* at pp. *8, *15.

■■■ Sections 330 and 331 authorize award of interim (§ 331) and final (§ 330) fees and cost to professionals. 11 U.S.C. §§ 330(a) and 331.

■■■■ The thrust of these statutes and the corresponding bankruptcy rules is to make the bankruptcy judge a gatekeeper charged with assuring an orderly and efficient use of the debtor's assets. The role of the judge is not perfunctory. Rather, it is to prevent the abuses that might occur if the debtor, in its weakened condition, were allowed to hire and pay professionals without court supervision. *Pannebaker*, 198 B.R. at 463 n. 6 (citing *In re Alberto*, 121 B.R. 531, 538 (Bankr.N.D.Ill. 1990)) (noting that the court's role in awarding interim fees is not merely perfunctory).

*Precedents in Bankruptcy Dealing with Prepetition Retainers*

Judge Wedoff's opinion in this Bankruptcy Court held that counsel who had received an advance payment retainer did not have to apply to the court for authorization to draw on the retainer. *McDonald*, 114 B.R. at 1003. The court's decision was based on review of Illinois law which was found to allow attorneys to treat "classic" and "advance payment retainers" as property of the attorney. *Id.* at 1001–02. The court reasoned that because the client retains no interest in an advanced payment retainer, the retainer is not estate property. Therefore, the attorney is

only required to disclose the payment under Section 329, and is not subject to Sections 330 and 331 of the Code. *Id.* at 1002 (citing *In re Fulton,* 80 B.R. 1009, 1011 (Bankr.D.Neb.1988)).

In *McDonald,* debtor's counsel disclosed receipt of a $12,500 prepetition retainer, which would be applied to work already performed and to work that would be performed in the future. Counsel further stated that in the event that the entire retainer was not used during the course of the representation the unearned funds would be returned to the debtor. Thus, according to Debtor's counsel, the retainer involved was an advanced payment retainer. The key to the court's analysis was the premise that state law, not the Code, determined the extent of a debtor's interest in the advanced payment retainer. "It has long been recognized that 'Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law' and that state laws are suspended only to the extent of actual conflict with the [bankruptcy] system." *Id.* at 996.

However, in a later opinion, Judge Barliant of our Court noted that Illinois state court opinions relied on in *McDonald* all involved classic or fixed fee retainers, not advance payment retainers. *In re Sheridan,* 215 B.R. 144, 146 (Bankr.N.D.Ill. 1996). *Sheridan* also pointed out that while *McDonald* relied on an Illinois State Bar Association Advisory Opinion to the effect that advanced payment retainers are property of the lawyer, there was another Advisory Opinion opining that unearned funds given as security for legal work are not the property of the attorney.

*Sheridan* agreed with *McDonald's* analysis that state contract law determines a debtor's interest under an advanced retainer agreement. However, *Sheridan* also held that no matter how the retainer is characterized under state law, whether as a classic or advanced retainer, if the debtor retains an interest in the funds when the bankruptcy commences, then under bankruptcy law the funds are property of the estate. *Id.* Therefore, the opinion concluded that an advanced payment retainer is property of the estate because the debtor retains an interest in the funds not due for fees, and as such the debtor's lawyer had to comply with Sections 330 and 331 before any fees could be collected from the retainer. *Id.* at 147. *Sheridan* distinguished "advanced payment retainers" as well as "security retainers," in which the debtor also retains an interest in the payment, from classic retainers where the payment becomes property of the lawyer as soon as it is made. Also, that opinion pointed out that the facts and actual retainer agreement in any case must be reviewed to decide whether a prepetition retainer was intended to become the attorney's property or was intended as security for future services. *Sheridan, Id.* at 145 (court basing analysis on a review of "key" provision of retainer agreement wherein law firm agreed to return any unearned portion of retainer). Similarly, *see McDonald,* 114 B.R. at 1002 and *In re Burnside Steel Foundry Co.,* 90 B.R. 942, 945 (Bankr.N.D.Ill.1988).

Illinois precedents recognizing "classic" retainers in bankruptcy have gained some support from language in a recent 8th Circuit opinion. *National Credit Union Administration Board v. Johnson,* 133 F.3d 1097, 1103 (8th Cir.1998) ("we simply hold as a matter of law that an insolvent debtor in a bankruptcy proceeding may pay a nonrefundable retainer to attorneys of his choice for representation ...").

However, the two cited opinions by other bankruptcy judges in this District recognizing classic retainers in bankruptcy represent a minority view. Most bank-

188

ruptcy judges have found that all prepetition retainers are property of the estate, which cannot be taken for payment or expenses without court approval. Norton, *supra,* § 27:17 Fn. 83 (citing list of opinions). "Most bankruptcy courts have concluded that a prepetition retainer paid by a debtor to counsel is security for, or held in trust for, payment of fees and cost to be incurred." *In re Printcrafters Inc.,* 233 B.R. 113, 118 (Bankr.D.Colo.1999) (citing *In re Printing Dimensions Inc.,* 153 B.R. 715, 719 (Bankr.D.Md.1993)); *In re Hathaway Ranch Partnership,* 116 B.R. 208, 217 (Bankr.C.D.Ca.1990) (advanced fee payments are always property of the estate no matter how they are described).

Those majority opinions have adopted a per se rule which bars classic retainer agreements in bankruptcy. *In re NBI, Inc.,* 129 B.R. 212, 223 (Bankr.D.Colo.1991) (stating that classic retainers "nullify" the protections the Code provides for the debtor and creditors). According to those opinions, it does not matter that state law allows attorneys to contract with their clients for a classic retainer. They reason that bankruptcy courts must oversee payments made by debtors to their attorneys, and agreements between debtors and their counsel are not binding on the court because only the court can determine the extent of counsel's interest in a prepetition retainer. *Id.* at 225 (freedom of contract is limited in the context of bankruptcy); *In re Chapel Gate Apartments,* 64 B.R. 569, 574 (Bankr.N.D.Tx.1986) (terms of agreement between debtor and counsel are not binding on court). The majority view holds that classic retainers "usurp" the bankruptcy court's authority under Sections 327, 328(a), 329, 330, and 331 of the Code and corresponding Bankruptcy Rules. *NBI,* 129 B.R. at 223; *Chapel Gate,* 64 B.R. at 573 (stating that allowing an attorney to draw against a retainer at

will would "emasculate" § 331 of the Code).

Nonetheless, for reasons discussed below, the analysis of the present case will be guided by the principles articulated in *Sheridan* (and *McDonald* to the extent followed by *Sheridan*).

*ANALYSIS*

■■■ As noted, inquiry into the nature of Counsel's retainer is a question of fact. *Burnside Steel,* 90 B.R. at 945 (best evidence of type of retainer is written retainer agreement), *McDonald,* 114 B.R. at 1002 (disputes about type of retainer can only be resolved as a question of fact). Counsel therefore bears the burden of proving that Debtor intended the retainer to be a present payment when made, not as security for future services.

■■■ Counsel has thus far not met his burden or even pleaded that he can meet it. His affidavit in support of Debtor's application to employ Counsel merely states vaguely that he received "an advanced payment retainer which could also be considered a classic retainer...." (Affidavit of Richard M. Kates ¶ 3). This assertion is ambiguous, because by definition an advanced payment retainer cannot be both an advance retainer and a classic retainer. *See NBI,* 129 B.R. at 224 (criticizing *McDonald* for failing to recognize the inherent difference between advance and classic retainers); and *Hathaway,* 116 B.R. at 216 (retainer cannot be both a true engagement fee and advanced fee). The advance retainer is an advance to cover future services and cost expected to be incurred during the representation. *McDonald,* 114 B.R. at 1000. The classic retainer is for the attorney's promise to be available to represent the client during a specified time; thus, the classic retainer is not intended to cover any particular legal services. *Id.* at 998. With an advance

retainer, the lawyer has to return any balance to the client if the representation terminates before the payment is depleted. *Smith*, 213 Ill.Dec. 550, 659 N.E.2d at 907. In contrast, the classic retainer is earned on receipt whether the attorney subsequently represents the client during the specified time or not. *McDonald*, 114 B.R. at 998. Counsel must present evidence to resolve the ambiguity in his stated position and show proof regarding the retainer before he can claim that the advanced payment he received is not property of the estate and he is exempt from filing a fee application.

Assuming *arguendo* that Counsel can meet his burden, two issues must still be resolved.

 First, should Counsel be sanctioned for failing make a timely disclosure as required by Fed.R.Bankr.P.2016(b). Debtor's petition was filed on December 13, 2000, therefore, under Rule 2016(b), Counsel had to file a statement disclosing the $5,000 payment prior to December 29, 2000. But Counsel's disclosure was not filed until February 20, 2001. Thus, the court can order Counsel to disgorge all or a portion of his fee for failing to make a timely disclosure. *In re Woodfield Gardens Associates*, No. 97 B 26706, 1998 WL 276453, at *4.

 Secondly, should this Court join the majority view, which bars any prepetition retainers from becoming property of debtor's counsel, or join with the judges in this District who have upheld the right of debtors to make classic retainer agreements prior to filing for bankruptcy?

There is no support in the Code for the majority view that all prepetition retainers are property of the estate. *McDonald*, 114 B.R. at 996; Norton, *supra*, § 27:17. As *McDonald* points out the majority view assumes that if the debtor receives ser-

vices during the bankruptcy, the services must be compensated from the estate. *Id.* But the majority view would expand the debtors estate to encompass any payment made prior to bankruptcy in which the services to be owed in return are performed during the bankruptcy. Although a debtor who gives a classic retainer has a contract right to the performance due from the attorney, this does not give rise to a property right in the classic retainer used to secure counsel's availability. If counsel fails to perform, the debtor or trustee may bring an action at law against the lawyer for damages. However, the debtor or trustee could not bring a claim to recover the classic retainer itself because the debtor retains neither a legal or equitable interest in the payment once that payment is given to the lawyer.

Moreover, the express language of the Code runs counter to the position of the majority view. "The Bankruptcy Code expressly contemplates the payment of retainers to attorneys." Norton, *supra*, 2d § 27:17 (citing 11 U.S.C.A. 328(a)). Sections 328 and 329 would be superfluous if all advanced payment retainers comprised estate funds. The court could require an attorney to apply for funds under Section 330 or 331 and thereby eliminate need to determine whether the retainer agreement between the debtor and counsel is reasonable(§ 328(a)) or excessive (§ 329(b)). Finally, § 541(a)(3) belies the claim that because the court can avoid payments to the lawyer under § 328 or § 329, the payments must be property of the estate. As *McDonald* and *Sheridan* pointed out, § 541(a)(3) means that the payments are not property of the estate until they are avoided. *Sheridan*, 215 B.R. at 147 n. 6; *McDonald*, 114 B.R. at 997.

Another reason not to embrace the majority position on prepetition retainers is that it is inconsistent with Illinois law. In

*Smith,* the lawyer had taken a $500 retainer as part of a "standard retainer agreement" to obtain a divorce for the client. However, the client reconciled with her husband before the decree was issued and demanded the return of a portion of her retainer. Counsel failed to return the funds for two years. The Illinois Supreme Court upheld the suspension of the lawyer and noted that "there is nothing in the record to suggest that this prepaid legal fee amounted to a nonrefundable retainer." *Smith,* 213 Ill.Dec. 550, 659 N.E.2d at 907–08. That precedent shows that earned on receipt retainers are still allowed in Illinois, but also shows why *Sheridan* was correct in its determination that a debtor retains some interest in an advanced payment retainer. *Sheridan,* 215 B.R. at 147.

It cannot be presumed that Congress intended to abrogate the principle that state law governs a debtor's interest in property without some express language in the Code to support such a position. The attempt of opinions holding the majority view to find support for such a position in provisions of the Code governing the employment of professionals is not persuasive.

■ Of course, even a classic retainer or advance payment retainer might be subject to recovery by a Trustee as a preference under circumstances set forth in 11 U.S.C. § 547(b) and § 550.

### CONCLUSION

Counsel here must meet his burden of showing that the retainer he received was a "classic" retainer, or if it was an "advance payment retainer" he must show whether his work used it up fully or not. However, if Counsel can show that the retainer was a "classic" retainer, he will not be required to apply to the Court before he can use the funds. However, he must also deal with the possible sanctions under Rule 2016(b) Fed.R.Bankr.P. by showing why he tardily filed his disclosure, and must show why he delayed in seeking approval of his appearance representing Debtor in the Chapter 11 work.